Glen JONES

v.

PALMER MEDIA, INC., and Baron
I. Shacklette.

Civ. A. No. P–76–53–CA.

United States District Court,
E. D. Texas,
Paris Division.

Oct. 22, 1979.

Franklin Jones, Jr. of Jones, Jones & Baldwin, Marshall, Tex., and Earl Sharp of Sharp, Ward, Ross, McDaniel & Starr, Longview, Tex., for defendant Baron Shacklette.

Bird Old, Jr., Mount Pleasant, Tex., for defendant Palmer Media, Inc.

Clifton Holmes, Jr., Kilgore, Tex., for plaintiff.

## MEMORANDUM OPINION AND ORDER

ROBERT M. PARKER, District Judge.

After the death of Congressman Wright Patman, a special congressional election to fill his unexpired term in Congress from the First Congressional District of Texas was held in 1976. Plaintiff, Glen Jones, was a candidate for election to the United States Congress in the Texas Democratic Primaries and the special congressional election. The Plaintiff and Congressman Sam Hall were the two candidates participating in the June 5, 1976, Democratic party runoff for the congressional seat. Defendant Baron I. Shacklette was an administrative assistant to Representative Patman and, following Patman's death, the Defendant Shacklette assumed control of the office for all administrative purposes. The Defendant Shacklette retained control of the congressional office for the First District of Texas during the period of time between Congressman Patman's death and the swearing-in of Congressman Sam Hall.

In mid-May 1976 Defendant Shacklette was interviewed by Robert Palmer, a representative of Defendant Palmer Media, Inc., in the congressional office for the First District of Texas. During this interview, Defendant Shacklette allowed Mr. Palmer to have access to certain files of the late Congressman Patman relating to Plaintiff Jones. Plaintiff alleges that these files contained confidential State Department information, and that Defendant Shacklette used his position of trust as an employee of the U. S. Government to disseminate such confidential information and intrude upon his constitutionally protected zone of privacy.

Defendant Shacklette, during a press meeting with Mr. Palmer, is alleged to have falsely and maliciously characterized an experience that the Plaintiff had in Africa in 1964 as an "arrest." An account of Defendant Shacklette's remarks concerning Plaintiff Jones appeared in the May 30, 1976, edition of Defendant Palmer Media's newspaper, *The Mount Pleasant Daily Tribune*. The newspaper story was entitled "Jones Denies African Arrest Allegations," and contained the statement that "Shacklette told the *Daily Tribune* that Jones had been arrested as a young man in Africa." Plaintiff's Original Complaint, p. 10. It is the Plaintiff's contention that Defendant Shacklette's actions constituted a malicious and intentional interference with the Plaintiff's constitutionally protected right to participate in a federal election. Plaintiff contends that Defendant Shacklette made a piecemeal release of confidential information and that he knowingly made a false statement regarding an experience of the Plaintiff's in Africa in 1964.

In November, 1964, Plaintiff was detained in Lorenzo Marques, Portuguese East Africa, by authorities for an investigation relating to possession of certain religious literature. The Plaintiff was released after being detained for four days, and no criminal charges were filed against him by Portuguese East African authorities. From November 15, 1964, until December 2, 1964, the *Paris News* ran a series of articles on this incident. The Plaintiff granted the *Paris News* a news interview upon his return to the United States, and an article recounting this news interview appeared in the December 2, 1964, edition of the *Paris News*; this article contained statements that the Plaintiff had been ". . . held prisoner in Lorenzo Marques . . ." and that the Plaintiff and his companions had been ". . . virtual prisoners of the Portuguese . . ." The Associated

Press carried a wire story on Plaintiff's African experience in November, 1964, and the *Dallas News* published a story about the incident on November 20, 1964. Oral Deposition of Glen Jones, p. 48.

During this period of four days, both Congressman Patman and the State Department were involved in negotiations with the East Portuguese African government for the release of the Plaintiff; both Congressman Patman and the State Department developed files relating to this incident. Plaintiff opposed Congressman Patman in the 1974 Democratic Primary for election to the First Congressional seat and, during the campaign, Patman's office obtained some or all of the State Department's file and incorporated it into the Congressman's file on the 1964 incident in Africa involving the Plaintiff.

Plaintiff contends that Defendant Shacklette's piecemeal and distorted release of Congressman Patman's file created the false impression to Mr. Palmer that Plaintiff had been arrested in Africa in 1964, and that this subsequently resulted in a story published by Defendant Palmer Media, Inc., maliciously interfering with the Plaintiff's right to participate in federal elections. Additionally, Plaintiff alleges that Defendant Shacklette released confidential information violating the Plaintiff's constitutional right to privacy.

Defendant Shacklette has filed a motion to dismiss Plaintiff's cause of action against him, and a motion for summary judgment. Defendant Shacklette contends that this Court lacks *in personam* jurisdiction, that any actions of the Defendant Shacklette were not taken under color of law, and that all acts of the Defendant are immune from civil or criminal liability by the Speech or Debate Clause. Additionally, the Defendant Shacklette contends that he did not invade any constitutionally protected zone of privacy of the Plaintiff, and that the May 30, 1976, *Daily Tribune* story did not constitute interference with the June 5, 1976, Runoff Election. Defendant Shacklette contends that in fact he gave to Mr. Palmer only a series of articles printed in

1964 in the *Paris News* relating to the Plaintiff's African experience, and that he never referred to the 1964 incident as "an arrest" of the Plaintiff.

Where a Defendant moves for summary judgment, the Court is to view the facts in a light most favorable to the Plaintiff. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Defendant Shacklette's motion for summary judgment has raised the following issues:

(1) Whether this Court has *in personam* jurisdiction over Defendant Shacklette under § 2031b, Tex.Rev.Civ.Stat.

(2) Whether Plaintiff has a constitutionally protected right to privacy and, if so, did Defendant Shacklette intrude upon that zone of privacy by his actions during the meeting with Mr. Palmer in May, 1976.

(3) Whether the *Daily Tribune* story of May 30, 1976, said story the result of Defendant Shacklette's interview with Mr. Palmer, maliciously interfered with Plaintiff's right to participate in a federal election.

(4) Defendant's motions have raised an issue under *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), as to whether the Plaintiff has satisfied the "stigma plus" test in his allegation that Defendant Shacklette, a federal official, has damaged his reputation under *Paul v. Davis*. Specifically, this Court must analyze whether the Plaintiff has alleged sufficient facts indicating that the Defendant Shacklette deprived him of a property or liberty interest to which the procedural guarantees of the Fifth Amendment apply. Alternatively, the Plaintiff can satisfy the *Paul v. Davis* "stigma plus" test if he can state a cause of action for invasion of his constitutional right to privacy in addition to the allegation of reputational damage.

Defendant Shacklette, a Maryland resident, has moved to dismiss the Plaintiff's complaint for lack of *in personam* jurisdiction. It is the Defendant's position that because all of the alleged wrongs were committed in Washington, D.C., Article 2031b

does not allow service of process to be issued upon the Defendant. Under 2031b, a nonresident is defined as "doing business" in Texas so as to be subject to service of process by the commission "of any tort in whole or in part in this State." Article 2031b, Tex.Rev.Civ.Stat. In *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973), the Plaintiff brought a defamation action which involved false statements made by the Defendant in Arizona, which allegedly defamed the Plaintiff in Texas. In holding the Arizona Defendant amenable to service of process under 2031b, after finding that the Plaintiff had made out a prima facie case of libel, the Fifth Circuit noted that:

> "It is immaterial that the tortious act occurred outside the state, for it is well established that the statute extends to injury occurring within the state as a result of a wrongful act committed outside the state." *Id.,* p. 1232.

Plaintiff Jones has alleged that his constitutional right to privacy and his right to participate in the federal election process were interfered with in the Eastern District of Texas, so that the Defendant Shacklette is amenable to service of process under Article 2031b.

■ Where a Plaintiff is proceeding directly under the Constitution, it is necessary that the Defendant have acted under color of law in depriving the Plaintiff of his constitutional rights. *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 26 L.Ed.2d 619 (1971).

■ Defendant Shacklette contends that because Congressman Patman had passed away at the time of the incident in question, any actions of the Defendant as Administrative Assistant were not done under color of law. At the time of the release of allegedly confidential and defamatory information to Defendant Palmer Media, Inc., Defendant Shacklette was performing a caretaker type position, finishing the business of the late Congressman Patman's office. The fact that Defendant Shacklette

had supervision over and control of the congressional office, under the auspices of the Speaker of the House, and in fact was continuing to be paid by the House of Representatives, makes Patman's death immaterial as to whether Defendant Shacklette was acting under color of law. At the time of the alleged slander and invasion of privacy, Defendant Shacklette's responsibilities included press relations, and it was during an interview with the press that the alleged constitutional deprivation took place. As a matter of law, the Defendant Shacklette was acting under color of law during the occasion in question.

Immunity afforded to members of Congress by the Speech or Debate Clause is much narrower in scope than actions deemed to have been taken in a governmental capacity. A conclusion that the Defendant Shacklette was acting under color of law does not mandate congressional immunity for all such actions.

Article I, Section 6, of the Constitution, provides that: ". . . for any speech or debate in either House . . . [Senators and Representatives] shall not be questioned in any other place." The framers of the Constitution modeled the Speech or Debate Clause after the English Bill of Rights of 1689, which prevented the monarchy from using civil or criminal law to intimidate members of Parliament. "The Supreme Court, 1971 Term," 86 Harvard L.Rev. 189 (1972). The policy of the Speech or Debate Clause is to reinforce separation of powers and to protect the independence and integrity of Congress's judgment. Protection "against possible prosecution by an unfriendly executive and conviction by a hostile judiciary" is the purpose of the legislative immunity given by the Speech or Debate Clause. *U. S. v. Johnson,* 383 U.S. 169, 179, 86 S.Ct. 749, 15 L.Ed.2d 681 (1965).

*Gravel v. U. S.,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1971), established the principle that for purposes of construing the Speech or Debate Clause, a Congressman and his administrative assistant are to be created equally; thus, when activities of

a Congressman's legislative aide are being analyzed, they are to be treated as if actually performed by the Senator or Representative himself. The policy underlying *Gravel's* affording legislative assistants immunity co-extensive with that of Senators and Representatives is that legislative tasks simply cannot be performed without the assistance of administrative aides. In holding that Senator Gravel's aide's activities came within the ambit of legislative immunity, the Court noted:

"... that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latters' alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause ... will inevitably be diminished and frustrated." *Id.,* at p. 616–617, 92 S.Ct. at p. 2623.

Thus, the dissemination of materials by Defendant Shacklette is to be viewed for purposes of any possible immunity as if Congressman Patman himself had given out the information about Plaintiff.

■ Although press relations and maintenance of a file system come within the official duties of a Congressman's administrative aide, the scope of protection afforded by the Speech or Debate Clause is limited. Immunity extends only to those activities that are legislative in nature, as opposed to activities that are political in nature. Political activities that are subject to judicial scrutiny "include a wide range of legitimate 'errands' performed for constituents, the making of appointments with government agencies, assistance in securing government contracts, preparing so-called 'news-letters' to constituents, news releases, and speeches delivered outside of Congress." *U. S. v. Brewster,* 408 U.S. 501, at p. 512, 92 S.Ct. 2531, at p. 2537, 33 L.Ed.2d 507 (1971); on the other hand, legislative activities that are afforded the protection of the Speech or Debate Clause are limited to "... words spoken in debate .. [preparation of] committee reports, resolutions ... and the act of voting .. [and in general] 'things generally done in a session of the House by one of its members

in relation to the business before it'." *Powell v. McCormack,* 395 U.S. 486, at p. 502, 89 S.Ct. 1944, at p. 1954, 23 L.Ed.2d 491 (1969), quoting *Kilbourn v. Thompson,* 103 U.S. 168, at p. 204, 26 L.Ed. 377 (1881). Because Congressman Patman had passed away at the time of the incident in question, Defendant Shacklette's activities cannot be characterized as legislative in character. Further, press relations is an activity specifically included within the definition of unprotected political activities in *Brewster.* The Court holds that as a matter of law the Defendant Shacklette cannot be extended the privilege of being free from the burden of defending himself against a civil cause based upon political activities he undertook in the scope of his employment as an administrative assistant.

In *Paul v. Davis,* the Plaintiff brought a § 1983 cause of action against the local police chief, alleging that the Defendant had unjustifiably included his name and picture in a shoplifter's circular distributed to local merchants. The Plaintiff contended that the Defendant had deprived him of rights secured by the Fourteenth Amendment. In rejecting the Plaintiff's claim, the Supreme Court established the "reputation plus" test and held that merely alleging damage to reputation does not establish a § 1983 claim.

"The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the Government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either liberty or property by itself sufficient to invoke the procedural protection of the Due Process Clause. ... the weight of our decisions establishes no constitutional doctrine converting every defamation by a public of-

ficial into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." Id., pp. 701–702, 96 S.Ct. p. 1161.

In footnote 3, the Court pointed out that its decision was equally applicable to the issue of whether a plaintiff proceeding directly under the Constitution alleging defamation by a federal official states a cause of action under the Due Process Clause of the Fifth Amendment.

Because injury to one's reputation is not sufficiently tangible, the Court in *Paul v. Davis* ruled that the alleged defamation must interfere with or alter a legal status or property right of the complainant. By way of example, the Court noted that reputational damage could be coupled with such state protected rights as employment, *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); a driver's license, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); or a privilege to buy liquor, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

In *Paul v. Davis,* the Plaintiff did not lose his job and could only allege the Defendant state official deprived him of future employment opportunities without complying with procedural due process; this was held insufficient to state a constitutional deprivation under § 1983.

Plaintiff Jones does not contend that he was deprived of a status protected by state law; rather, the allegation is deprivation of rights secured by the Federal Constitution. In footnote 5 of *Paul v. Davis,* the Court explained that § 1983 makes actionable a deprivation of interests guaranteed by the Bill of Rights.

■  Defamation by a federal official can give rise to a cause of action directly under the Constitution, if, in addition to reputational damage, there is (a) a loss of liberty or property that is protected by the Fifth Amendment, or (b) a violation of fundamental personal privacy rights. *Id.,* 424 U.S. p. 710–713, 96 S.Ct. 1155.

■■  The Fifth Amendment's procedural guarantees apply to the 'property' or 'liberty' interests that are listed in the Bill of Rights and the Constitution. The right to participate in the federal election process is a liberty interests that is guaranteed by Article I of the United States Constitution; and interference with this right is prohibited by statute. 18 U.S.C. § 595. Thus, in linking interference with the right to participate in federal elections with infliction of reputational damage, Plaintiff Jones satisfies the *Paul v. Davis* "stigma plus" test by alleging the defamation by a federal official acting under color of law deprived him of a liberty right without due process of law. However, the Plaintiff Jones has wholly failed to allege facts necessary to state a cause of action for defamation or for interference with the election process. There can be no doubt that the Plaintiff's 1964 African experience was information in the public domain. Because the Plaintiff was a candidate for Congress, the public had a right to know every aspect of Plaintiff's life. Under no circumstances could this Court hold that release of a series of 1964 newspaper articles concerning an incident in the Plaintiff's life constituted "interference" with the election process. Even assuming Plaintiff Jones' allegations that the Defendant Shacklette made a partial, piecemeal release of the 1964 series of articles to be true, the Plaintiff has not stated a cause of action for defamation or interference with the election process. The Plaintiff would have this Court believe that his right to participate in the federal election process can override the right of the constituents of the First Congressional District to know about the Plaintiff's 1964 African experience. The story of the African experience had been in the public domain for 12 years, and it is an untenable position to contend that a piecemeal, or even false, re-telling of that story one more time can constitute a defamation or interference with the election process. In the 1974 Congressional election, when Plaintiff was also an unsuccessful candidate, the press recounted the 1964 African experience during an interview of the Plaintiff conducted by Radio Station KPLT. In response to a KPLT question, the Plaintiff denied he had

been arrested in Africa in 1964. Oral Deposition of Glen Jones, p. 28. The alleged libelous story appeared on the Sunday before the election on Saturday, and was not on the "eve of the election" as the Plaintiff Jones has contended. Certainly, the Plaintiff could have cured the piecemeal release of the 1964 line of articles during the six days before the election; indeed, in the very article that is alleged to be a libelous interference with the election, the Plaintiff explained his version of the 1964 African incident; i. e., that it was only a detention, not an arrest.

■ The Plaintiff contends that Defendant Shacklette, acting under color of law, deprived the Plaintiff of his constitutional right to privacy. The Supreme Court has recognized that "zones of privacy" may be created by specific constitutional guarantees so as to limit governmental intrusion. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The Court in *Paul v. Davis* explained that ". . . this guarantee of personal privacy must be limited to those [personal rights] which are fundamental . . . [such activities being] matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Supra,* 424 U.S. at p. 713, 96 S.Ct. at p. 1166. While the right to participate in the federal election process is certainly important, it does not fall within the definition of constitutional right to privacy as enunciated in *Paul v. Davis.* Similarly, Plaintiff's contention that Defendant's distorted release of an allegedly confidential State Department file intruded into Plaintiff's protected zone of privacy must be rejected. It has been held that publication by the police of charges of criminal conduct does not violate the constitutional right to privacy, even when the police know that such charges are false. *Rosenberg v. Martin,* 478 F.2d 520, 525 (2d Cir.), *cert.* denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973).

Constitutional privacy is a limited area, and the zones created thus far by the Supreme Court include only the most intimate aspects of personal life. *McNally v. Pulitzer Pub. Co.,* 532 F.2d 69, 76 (8th Cir. 1976).

■ Even if this Court were inclined to view the Plaintiff's desire to have his African experience kept confidential as being within a constitutionally protected zone of privacy, the Defendant Shacklette's release to the press of a file containing only information in the public domain cannot be held to be a governmental intrusion upon a fundamental right to personal privacy. See *Cox Broadcasting v. Cohn,* 402 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

Finally, the Court reaches the contention that the Defendant Shacklette released a confidential file to the press. The Court has serious reservations regarding the contention that a series of 1964 newspaper articles is a confidential file; further, it is doubtful that any correspondence between the State Department and the East Portuguese African government in 1964 regarding the release of Plaintiff from custody can be considered confidential. Plaintiff Jones obtained the State Department's file on the 1964 African incident by making application under the Freedom of Information Act. Oral Deposition of Glen Jones, p. 9. It is an untenable position to take before this Court that information the Plaintiff obtained by invoking the Freedom of Information Act is confidential such that the constituents in the First Congressional District should be foreclosed from learning that information. The Court also notes that the Freedom of Information Act does not exempt from disclosure either a Representative's file or a State Department file on an international incident concerning a citizen. 5 U.S.C. § 552(b).

The Plaintiff has wholly failed to demonstrate that there is a genuine issue of material fact under the legal standards of Rule 56(c), F.R.Civ.P., and the Defendant Shacklette is entitled to judgment as a matter of law.

The Court grants Defendant Shacklette's motion for summary judgment and enters judgment for the Defendant Shacklette.

It is hereby ORDERED that the Plaintiff JONES take nothing as against the Defend-

ant SHACKLETTE, and all costs are taxed against the Plaintiff.