**Robert A. BORUCKI, Plaintiff,**

v.

**W. Michael RYAN, Daniel Labato, Kenneth Patenaude, Gerald L. Le Vitre, Eugene La France, Michael B. Wall, John Doe, Harry Doe, Robert Doe, Ralph Doe, and City of Northampton, Defendants.**

Civ. A. No. 84–0228–F.

United States District Court, D. Massachusetts.

Aug. 20, 1986.

Thomas F. McGuire, Amherst, Mass., Robert L. Ward and Themis J. Tsoumas, Belchertown, Mass., for plaintiff.

Roberta T. Brown, Asst. Atty. Gen., Boston, Mass., for Ryan.

Merrianne A. Thelwell, IBPO, Springfield, Mass., for LaFrance, LeVitre, Patenaude and Wall.

Patrick T. Gleason, Asst. City Sol., Northampton, Mass., John E. Dahl, Asst. City Sol., for Labato, Patenaude, LeVitre, LaFrance, Wall, Doe's, Northampton.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I.

Plaintiff alleges that early in the morning of February 17, 1983 one or more unknown persons damaged twenty-three aircraft at LaFleur Airport in Northampton. Plaintiff was arrested for the crime that evening. A district court justice ordered plaintiff to undergo a psychiatric evaluation at Bridgewater State Hospital for a period of twenty days. Doctors at Bridgewater determined that plaintiff was competent to stand trial. Nevertheless, on June 17, 1983, defendant Ryan, district attorney for the Northwestern District of Massachusetts, which includes Northampton, dropped the criminal complaint against plaintiff. The same day, Ryan held a press conference at which he openly discussed the contents of the Bridgewater report to the news media. He also characterized the Northampton Police Department's investigation of the LaFleur incident as "superb."

Plaintiff alleges that Ryan and several Northampton police officers and the City of Northampton violated his federally protected civil rights and are liable in damages pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988. In addition, plaintiff includes in his complaint pendant claims of intentional and negligent infliction of emotional distress and a violation of Mass.Gen.Laws ch. 12, § 11I (state civil rights statute).

Before the Court is defendant Ryan's motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Ryan raises four grounds in support of his motion: (1) the complaint fails to allege a cause of action against him because there is no general constitutional right to privacy that would encompass the allegations at issue here; (2) even if such a right were found, the right was not clearly established and Ryan would be entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); (3) Ryan, as prosecuting attorney, is absolutely immune from liability while in the performance of his official duties, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); (4) if all the federal claims are dismissed for any of the previous reasons, the pendant claims should also be dismissed because of an absence of a substantial federal question. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### II.

In passing on a motion to dismiss for failure to state a claim, the Court must

presume as true all factual allegations contained in plaintiff's complaint and resolve all reasonable inferences in favor of plaintiff, the non-moving party. *Miree v. De-Kalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). To succeed on his motion, Ryan has the burden of demonstrating that "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

With this standard in mind, the Court will discuss Ryan's arguments seriatim.

*A. Right To Privacy*

■ As stated by the Supreme Court in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), there are two essential elements to a claim under 42 U.S.C. § 1983.

> First, the plaintiff must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States. Second, the plaintiff must show that the defendant deprived him of his constitutional right "under color of any state ordinance, custom or usage of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Id.* at 150, 90 S.Ct. at 1604. It is not disputed that Ryan, as a district attorney, acted under color of state law. What the defendant does vigorously contest, though, is whether the plaintiff's complaint alleges a deprivation of a "right secured by the Constitution or laws of the United States."

Defendant Ryan urges that there is no constitutionally protected right to the nondisclosure of information contained in a court-ordered psychological evaluation. The parties agree that if such a right exists it must be founded in the constitutional protection of privacy.

Defendant is obviously correct that the Constitution nowhere mentions a right to privacy. But as stated by the Supreme Court, "In a line of decisions ... going back perhaps as far as *Union Pacific R.*

*Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). Justice Brandeis, in an oft-cited opinion, explained:

> The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure, and satisfaction of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.

*Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

Writing for a unanimous Court, Justice Stevens noted that Supreme Court cases revealed two distinct types of interests protected under the rubric of "privacy": "One is the interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). Plaintiff's interest in the instant litigation is clearly of the first type, referred to frequently as a "right of confidentiality."

*Whalen* involved a New York statute requiring physicians to report personal information of patients receiving certain prescription medications to a state agency. The Court unequivocally recognized that there was a privacy interest at stake. Nevertheless, it sustained the statute after having balanced the state interest against the relatively slight risk of public disclosure of the collected information. Of great interest to the Court was the statute's scrupulous security measures designed to

prevent unnecessary disclosure of personal information. *Id.* at 593–95, 97 S.Ct. at 873. Because the New York statutory scheme and implementing regulations demonstrated "a proper concern with, and protection of, the individual's interest in privacy," the Court did not "decide any question which might be presented by the unwarranted disclosure of accumulated private data. . . ." 429 U.S. at 605–06, 97 S.Ct. at 879.

In their separate concurring opinions, Justices Brennan and Stewart offered their insights into the question left unanswered by the Court. Justice Brennan stated, "[b]road dissemination of state officials of such information . . . would clearly implicate constitutionally protected rights, and would presumably be justified only by compelling state interests." *Id.* at 606, 97 S.Ct. at 879 (Brennan, J., concurring). By contrast, Justice Stewart rejected this possibility, finding that case law did not support "a general interest in freedom from disclosure of private information." *Id.* at 609, 97 S.Ct. at 881 (Stewart, J., concurring).

Approximately four months after the decision in *Whalen* was announced, the Court returned to the element of privacy characterized as " 'the individual interest in avoiding disclosure of personal matters' " and seemed to endorse the Brennan view. *Nixon v. Administrator of General Services*, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977) (*quoting Whalen*, 429 U.S. at 599, 97 S.Ct. at 876). Before the

Court in *Nixon* was former President Richard Nixon's challenge to the Presidential Recordings and Materials Preservation Act, Pub.L. 93–526, 88 Stat. 1695. This act directed the administrator of General Services to assume custody of President Nixon's papers and have them screened by government archivists to remove those materials deemed personal and return them to the former President. Among the grounds for the attack was a claim that the Act impinged on Mr. Nixon's privacy interests.

The Court's opinion, by Justice Brennan, acknowledged that Mr. Nixon did have a constitutionally protected privacy interest at stake: "We may agree with the appellant that, at least when Government intervention is at stake, public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to acts done by them in their public capacity." 433 U.S. at 457, 97 S.Ct. at 2797. This interest was plainly most acute where it pertained to "extremely private communications between him and, among others, his wife, his daughters, his physician, lawyer, and clergyman, and his close friends. . . ." *Id.* at 459, 97 S.Ct. at 2797. Nevertheless, this interest, when balanced against the need to screen all of the information and considering the regulations designed to assure confidentiality of the information (explicitly compared to the New York statutory scheme in *Whalen*), was found not to require invalidation of the statute.[1]

---

**1.** This portion of the opinion was joined by Justices Marshall and Stevens. In Chief Justice Burger's dissent, he explicitly recognizes that Mr. Nixon's privacy interests were at stake and concludes that these interests outweigh the purposes behind the Act. 433 U.S. at 525–36, 97 S.Ct. at 2831–37 (Burger, C.J., dissenting). The Chief Justice wrote that the Act constituted an intrusion into the former President's most personal papers and tape recordings touching upon highly confidential conversations with family members, friends, physicians and clergy. "Given this admitted intrusion, the legislation before us must be subjected to the most searching kind of judicial scrutiny. Statutes that trench on fundamental liberties, like those affecting significantly the structure of our government, are not entitled to the same presumption of constitutionality we normally accord legislation. *Moore v. East Cleveland*, 431 U.S. 494, 499 [97 S.Ct.

1932, 1935, 52 L.Ed.2d 531] (1977). The burden of justification is reversed; the burden rests upon the government, not on the individual, whose liberties are affected to justify the measure." *Id.* at 526–27, 97 S.Ct. at 2832.

Justice Rehnquist also seemed to endorse the constitutional right to privacy, though he conflated it, to some extent, with a separation of powers and executive privilege argument. 433 U.S. at 545–47 n. 1, 97 S.Ct. at 2841–42 n. 1 (Rehnquist, J., dissenting).

Justice Powell stated that though he agreed with much of this portion of the Court's opinion, he was unable to join because of "his uncertainty as to the reach of its extended discussion of the competing constitutional issues implicated by the Act." *Id.*, 433 U.S. at 492, 97 S.Ct. at 2815 (Powell, J., concurring). Justice Powell dismissed Mr. Nixon's privacy argument, not because he did not find that the right did not

Despite the clear language from *Whalen* and *Nixon*, defendant argues, relying primarily on *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that the circumstances of the release of information in this case did not impinge any constitutionally protected rights of the plaintiff. In *Paul* the Supreme Court rejected a plaintiff's attempt to bring a 1983 action against a chief of police who circulated to local shopkeepers a list of individuals who had been arrested for shoplifting. The Court noted that plaintiff's claim was grounded in a theoretical liberty interest in his reputation. With regard to plaintiff's privacy argument, the Court reflected that the state was not invading on a zone of privacy found to be protected in earlier Court opinions. *See id.* at 712–13, 96 S.Ct. at 1165–66. In rejecting the invasion of privacy claim, the Court stated that plaintiff's claim was

> based not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest.

*Id.* at 713, 96 S.Ct. at 1166.

*Paul* was, of course, decided prior to *Whalen* and *Nixon*. At least one noted scholar has questioned the degree to which *Paul* could be said to have limited a constitutional right to privacy.[2]

More fundamentally, however, *Paul* can be distinguished on the basis of the type of information that was alleged to have been disclosed. As stressed by the Court, *Paul* involved a publicly recorded event, the fact of an arrest. Plaintiff in this case alleges that Ryan disclosed the contents of a psychiatric evaluation. *See Fadjo v. Coon,* 633 F.2d 1172, 1176 (5th Cir.1981) (distinguishing *Paul* because plaintiff's case involves "the revelation of intimate information obtained under a pledge of confidentiality rather than the dissemination of official information"). As the Court's careful analysis of New York's statutory and regulatory treatment of patient's prescription records in *Whalen* clearly demonstrate, few areas of privacy are more deserving protection than communications between patient and doctor. *Whalen,* 429 U.S. at 593–95, 97 S.Ct. at 873.[3]

If medical communications generally are to be afforded protection, surely even greater protection is required in the area of psychiatric information, touching upon as it does an individual's "personal thoughts"—

exist, but because "[i]n view of the circumstances leading to [the Act's] passage and the protection it provides for 'any ... constitutionally based right or privilege,' *supra* at 496, [97 S.Ct. at 2816], this Act on its face does not violate the personal constitutional rights asserted by appellant." *Id.* at 502–03 n. 5, 97 S.Ct. at 2819–20 n. 5.

The only member of the Court who explicitly rejected the privacy argument totally was Justice Stewart who adhered to his views on privacy as expressed in his concurring opinion in *Whalen,* 429 U.S. at 607, 97 S.Ct. at 880. *Nixon,* 433 U.S. at 455 n. 18, 97 S.Ct. at 2796 n. 18 (Opinion of the Court).

2. If the Court's denial that *Paul v. Davis* involved any substantively protected interest had been truly authoritative, the Court's careful canvassing of the procedural safeguards provided by New York to the patients whose drug prescriptions were retained for five years in computer banks would have been quite unnecessary in *Whalen v. Roe,* and there would have been no need in a decision handed down on the same day as *Whalen [Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d

92 (1977) ], for the Court to stress the fact that a non-tenured public employee, who sought damages for his former employer's dissemination of the derogatory information leading to his dismissal, had failed to challenge the truth of the information in question.
L. Tribe, *American Constitutional Law,* 971 (1978).

3. Privacy, thus, is control over knowledge about oneself. But it is not simply control over the quantity of information abroad. There are modulations in the quality of the knowledge as well. We may not mind that a person knows a general fact about us, and yet feel our privacy invaded if he knows details. For instance, a casual acquaintance may know I am sick, but it would violate my privacy if he knew the nature of the illness. Or a good friend may know what particular illness I am suffering from, but it would violate my privacy if he were actually to witness my suffering from some symptom which he must know is associated with the disease.
Fried, "Privacy," 77 Yale L.J., 475, 483 (1968) (footnotes omitted), *quoted in United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 n. 5 (3d Cir.1980).

that which lies "at the heart of our sense of privacy." *Couch v. United States*, 409 U.S. 322, 350, 93 S.Ct. 611, 626, 34 L.Ed.2d 548 (1973) (Marshall, J., dissenting). One court has suggested that a constitutional right of privacy, above and beyond common law or statutory privilege, attaches to psychiatrist-patient communications. *In re Zuniga*, 714 F.2d 632, 641 (6th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983). *See also Hawaii Psychiatric Society v. Ariyoshi*, 481 F.Supp. 1028 (D. Hawaii, 1979) (striking down as unconstitutional administrative subpoena of medicaid provider reports on privacy grounds).

The case chiefly relied upon by defendant, *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir.1981), offers a highly limited and crabbed reading of *Whalen* and *Nixon*, premised largely on the view that no reasonable limiting principle can be found to define a right of privacy in constitutional terms. *Id.* at 1089–90 & n. 5. A better reading of *Whalen* and *Nixon* is to be found in the cases criticized in *DeSanti— Fadjo v. Coon*, 633 F.2d 1172, 1175–76 (5th Cir.1981); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577–80 (3d Cir.1980); and *Plante v. Gonzalez*, 575 F.2d 1119, 1132, 1134 (5th Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). *Accord Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1023 (D.C.Cir.1984), *vacated en banc*.

In light of *Whalen* and *Nixon*, the Court finds that information contained in plaintiff's psychiatric report is protected by the confidentiality branch of the constitutional right of privacy. Thus, insofar as plaintiff alleges that Ryan unjustifiably released this information to the news media, his complaint makes out a deprivation of "a right secured by the Constitution and laws of the United States," *Adickes v. S.H. Kress & Co.*, 398 U.S. at 150, 90 S.Ct. at 1604, and is actionable under the civil rights statutes.

### B. Qualified Immunity

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court reviewed its earlier decisions concerning the affirmative defense of "good faith immunity" available to government officials. The defense developed in recognition of the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). The Court expressed its concern that "insubstantial lawsuits" to which there were valid immunity defenses were proceeding beyond the summary judgment stage of litigation resulting in substantial societal costs, including expenses of litigation, diversion of official energy from public issues, deterrence of able citizens from holding public office and the fear of being sued dampening the ardor of public officials in the discharge of their duties. *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736.

To remedy this concern, the Court adjusted the good faith standard established by prior decisions. Formerly, the standard had both an objective and subjective aspect. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). With *Harlow* however the Court eliminated the subjective component in all but the rarest of cases.[4] The defense, as reduced to its objective component, was formulated as follows: "[G]overnment officials performing discretionary functions generally are shielded from liability for established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. For purposes of ruling on a motion for summary judgment, the Supreme Court instructs a judge to determine,

> not only the currently applicable law, but whether that law was clearly established

---

4. As noted by Justice Brennan in his concurrence, one who actually knew that he was violating the law could not escape liability for his actions "even if he could not 'reasonably have been expected' to know what he actually did know." 457 U.S. at 821, 102 S.Ct. at 2739 (Brennan, J., concurring) *quoting* Court's opinion at 819 n. 33, 102 S.Ct. at 2738 n. 33.

at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Id.* at 818–19, 102 S.Ct. at 2738.

As is clear from the Court's discussion in Part B *supra,* the Court has found that the Constitution forbids government officials from making unjustified public disclosures of an individual's psychiatric report. For purposes of Ryan's qualified immunity defense, however, it must be found whether this constitutional principle was clearly established in June of 1983 when Ryan is alleged to have held his news conference. The Court finds that it was.

The two critical Supreme Court cases on the "confidentiality" branch of the right to privacy, *Whalen* and *Nixon,* were both decided well before June 1983. The Court in *Whalen* unambiguously held that individuals had a constitutional "interest in avoiding disclosure of personal matters." 429 U.S. at 599–600, 97 S.Ct. at 876. Concededly, the Court avoided the question of the possible consequences of the government's unwarranted disclosure of accumulated personal data. 429 U.S. at 605–06, 97 S.Ct. at 879. Nevertheless, for purposes of *Harlow* immunity, it does not appear necessary that a reasonable person have knowledge of the *consequences* of infringing on constitutional rights, but only that the *existence* of the right be clearly established. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The opinions in *Nixon* clearly demonstrate that such a right does, in fact, exist, particularly for the most intimate matters, in which category a psychiatric report most certainly belongs.

The First Circuit has recently held that the Supreme Court's cases "are clear that the limits of good faith vary with the 'scope of the discretion and responsibilities of the office and all circumstances as they appeared at the time of the action.'" *DeAbadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986), *quoting Schever v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1691, 40 L.Ed.2d 90 (1974). Considering the facts as alleged in plaintiff's complaint, and resolving all reasonable inferences to his benefit, the Court finds that a reasonable district attorney would have been aware in June of 1983 that it was improper to disclose to the news media the intimate details of an individual's psychiatric report, *particularly once the decision has been made not to prosecute.* A reasonable district attorney should have known at that time that such unwarranted conduct does severe violence to plaintiff's constitutionally protected right of privacy.

Accordingly, the Court finds that defendant Ryan is not entitled to a defense of qualified immunity on plaintiff's right to privacy claim.

### C. Absolute Immunity

Defendant Ryan's third theory is directed solely to the fourth count in plaintiff's complaint. This count alleges that plaintiff was deprived of his constitutional rights by the defendants' "initiating criminal proceedings against plaintiff Borucki without probable cause, with malice and for the sole purpose of hindering, and obstructing or defeating the due course of justice...." Ryan contends that his alleged conduct falls within the absolute immunity accorded to a prosecutor's decision to initiate criminal proceedings. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Plaintiff counters that the acts of Ryan fall outside the scope of immunity under *Imbler.* According to plaintiff,

The factual basis for Count IV of the Complaint is the statements made to the press and published to the public ratifying and supporting the illegal acts of other defendants which occurred in their

**332**

investigation of the Plaintiff as Northampton Police Officers. Specifically, the District Attorney stated that the investigation of the Northampton Police in this case was "superb."

Plaintiff's Brief in Opposition to Motion to Dismiss at 7.

 Without regard for what was intended by Count IV of the complaint, it is clear that Ryan's decision to prosecute or not to prosecute Borucki falls squarely within the grant of immunity in *Imbler*. Even if the remarks made by Ryan are not similarly immunized, the Court is at a loss to understand how simply characterizing the police investigation as superb is actionable as a violation of plaintiff's civil rights.

Accordingly, the Court will dismiss Count IV of plaintiff's complaint as to Ryan.

### D. Pendant Claims

Inasmuch as the Court finds that plaintiff's complaint contains substantial federal questions, there is no necessity to dismiss the pendant claims pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### III.

To conclude, the Court finds that the factual allegations contained in plaintiff's complaint make out a cause of action for deprivation of a constitutionally protected right, viz, the right of privacy. Moreover, this right was clearly established at the time of the alleged deprivation, so defendant Ryan may not successfully invoke qualified good faith immunity at this stage. The Court does find, however, that Ryan is entitled to absolute immunity on the fourth count of plaintiff's complaint alleging malicious prosecution. Finally, having found a substantial question, the Court will not dismiss plaintiff's pendant state law claims.

Accordingly, Ryan's motion to dismiss is ALLOWED with respect to Count IV of plaintiff's complaint as it pertains to him only, and is DENIED in all other respects.

It is So Ordered.