636 F.2d 163
 9 O.S.H. Cas.(BNA) 1139, 1981 O.S.H.D. (CCH) P 25,027
GENERAL MOTORS CORPORATION, Plaintiff-Appellee, Cross-Appellant,
v.
DIRECTOR OF the NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY
AND HEALTH, DEPARTMENT OF HEALTH, EDUCATION AND
WELFARE, Defendant-Appellant, Cross-Appellee.
 Nos. 79-3168, 79-3169.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 18, 1980.
Decided Dec. 30, 1980.
 
 Susan J. Dlott, Asst. U. S. Atty., Dayton, Ohio, Leonard Schaitman, Alfred Mollin, Dept. of Justice, Civ. Div., Appellate Sect., Washington, D. C., for defendant-appellant, cross-appellee.
 Joseph P. Buchanan, Cowden, Pfarrer, Crew & Becker, Dayton, Ohio, Victor E. DeMarco, James L. Wamsley, III, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Edmond J. Dilworth, Jr., General Motors Corp., Detroit, Mich., for plaintiff-appellee, cross-appellant.
 Before ENGEL, BOYCE F. MARTIN, Jr., and JONES, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 This appeal concerns the enforceability of a subpoena duces tecum issued pursuant to 29 U.S.C. § 657(b) by the National Institute for Occupational Safety and Health (the Institute) against General Motors Corporation. Both parties appeal from a District Court order granting partial enforcement of the subpoena.
 
 
 2
 The Institute was created to effectuate the research policy of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651(b)(5), (6), (7), and 671. In 1976, at the request of the union representing employees at General Motors' Dayton, Ohio, Inland Division, the Institute undertook a "health hazard evaluation" at the facility known as the "Hill Plant." The purpose of this inquiry was to determine the cause of certain skin diseases incident among workers in the "wet rubber process."
 
 
 3
 On October 17, 1977, in the course of gathering information for its study, the Institute issued a subpoena duces tecum directing General Motors to produce the medical records of all "wet rubber process" employees. These records are on file in the office of the plant physician and are normally accessible only to members of the company's medical staff. General Motors took the position that it would comply with the subpoena only if individual employees signed a form authorizing release of their records. The company distributed consent forms to 704 workers; of this number, 490 failed to execute the release. These 490 medical files are the subject of the present controversy.
 
 
 4
 On October 19, 1977, General Motors petitioned the District Court for a declaratory judgment relieving the company of any duty to divulge the contents of the 490 records. In a memorandum opinion reported at 459 F.Supp. 235 (S.D.Ohio 1978), the District Court ordered General Motors to produce the subpoenaed material but authorized the deletion of individual employees' names and addresses from the files.
 
 
 5
 On appeal, the Institute points out that for purposes of a health hazard evaluation, medical histories of identifiable employees are significantly more helpful than anonymous records; it contends that the District Court erred in permitting the company to withhold this information.
 
 
 6
 General Motors, on the other hand, raises the following arguments: first, that the Institute has no statutory authority to issue subpoenas at all; second, that the compulsory disclosure of these records infringes both the employees' constitutional privacy rights and the privilege that exists between physician and patient under Ohio law.
 
 
 7
 General Motors appears to concede that the Institute is seeking information relevant to a lawful investigation. 29 U.S.C. §§ 669, 671; United States v. McGee Industries, Inc., 439 F.Supp. 296 (E.D.Pa.1977), aff'd without opinion, 568 F.2d 771 (3rd Cir. 1978). It denies, however, that the Institute is empowered to obtain data for its analysis by means of a subpoena. We disagree. The Institute's authority is coextensive with that of the Secretary of Health, Education and Welfare. 29 U.S.C. § 671(c)(2). 29 U.S.C. § 669(b) empowers the Secretary of Health, Education and Welfare, and therefore the Institute as well, to conduct investigations in the manner prescribed by Section 657 of the statute. That section provides, in pertinent part:
 
 
 8
 In making his inspections and investigations under this chapter the Secretary (of Labor) may require the attendance and testimony of witnesses and the production of evidence under oath ....
 
 
 9
 We are satisfied that Congress, by reference back to preceding sections of the statute, intended to confer subpoena power on the Institute. General Motors' contention that the District Court erroneously "implied" this power is without merit.
 
 
 10
 We turn now to the central issue in this controversy whether the Institute can obtain, in individually identifiable form, the medical records of the 490 General Motors employees who did not execute releases. General Motors raises two objections to disclosure. First, it argues, full enforcement of the subpoena would be inconsistent with Ohio Rev.Code §§ 2317.02 and 4731.22, enacted to protect the confidentiality of physician-patient communications.
 
 
 11
 We reject this analysis by noting that the Ohio privilege statute is not the controlling principle of law here. This case presents a federal question; the applicability of a privilege must, accordingly, be ascertained by reference to federal statutes and the common law. Heathman v. United States District Court, 503 F.2d 1032 (9th Cir. 1974). The common law did not recognize a physician-patient privilege at all. Whalen v. Roe, 429 U.S. 589 at 602, n. 28, 97 S.Ct. 869 at 877, n. 28, 51 L.Ed.2d 64 (1977). Neither has Congress codified the concept in a federal statute. A decision in this case based on considerations of the physician-patient relationship would, in effect, expand the scope of the "federal common law." This we decline to do.
 
 
 12
 General Motors predicates its second argument against full enforcement of the subpoena upon its employees' right to privacy. The production of identifiable medical records would, according to the company, infringe upon the "zone" of privacy interests protected by the Constitution.
 
 
 13
 In particular, General Motors has expressed concern that the retention of names and addresses in the subpoenaed material might lead to the "exposure" of information which employees revealed to the plant physician in the expectation that it would remain strictly confidential. On the other hand, in the absence of individual identification, the Institute's performance of its statutory duties would be hampered. It would be impossible for the Institute's investigators to follow up and confirm or refute suspected cases of occupational skin disease revealed in their study of medical records which were anonymous.
 
 
 14
 We do not believe that the parties' interests in this case are mutually exclusive. With proper security administration, the Institute should be able to complete the comprehensive health hazard evaluation requested by the employees' Union without jeopardizing the constitutional rights of the individuals involved.
 
 
 15
 In Whalen v. Roe, supra, the Supreme Court examined the potential conflicts between a public agency's statutory right of access to individuals' medical records and the patients' constitutional privacy interests. Satisfied that adequate provision has been made to prevent dissemination of personal information beyond the agency's records, the Court upheld a New York statute requiring physicians to report to the Health Department the names of patients receiving dangerous but legitimate drugs such as methadone and amphetamines. On the issue of governmental intrusion into health matters of a highly personal nature, the Court concluded:
 
 
 16
 (D)isclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissable invasion of privacy.
 
 
 17
 (Footnote omitted). Id. at 602, 97 S.Ct. at 877. The Court did, however, explicitly reserve judgment on administrative schemes which comprise less comprehensive security measures against unwarranted disclosure than those practiced by the New York Health Department. Id. at 605, 97 S.Ct. at 879.
 
 
 18
 The Whalen decision persuades us the Institute is entitled to enforcement of its subpoena duces tecum.[1] As the Institute states in its brief, United States v. McGee Industries, Inc., supra, adopts the proposition that a District Court may, in fact, fashion protective orders when enforcing an Institute subpoena duces tecum as a means of safeguarding against the improper disclosure of confidential business information. The brief of the Institute further assures us that under the contract there will be no public disclosure of the medical information pertaining to individual General Motors employees. With this in mind, we remand the case to the District Court for formulation and implementation of security provisions that will ensure proper disposition of the subpoenaed records as outlined in this opinion.
 
 
 
 [1]
 Three United States District Courts have reached the same result in cases very similar to this one. United States v. Allis-Chalmers Corporation, 498 F.Supp. 1027 (E.D.Wis.1980); United States v. Westinghouse Electric Corporation, 483 F.Supp. 1265 (W.D.Pa.1980); E. I. DuPont de Nemours and Co. v. Finklea, 442 F.Supp. 821 (S.D.W.Va.1977)