Robert A. BORUCKI,
Plaintiff, Appellee,

v.

W. Michael RYAN, etc.,
Defendant, Appellant.

No. 86–1886.

United States Court of Appeals,
First Circuit.

Heard April 9, 1987.

Decided Aug. 27, 1987.

Roberta Thomas Brown, Legal Counsel to the Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, was on brief for defendant, appellant.

Thomas F. McGuire, Fall River, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

[1] Plaintiff-appellee Robert Borucki filed a complaint in the United States District Court for the District of Massachusetts against defendant-appellant Michael Ryan, District Attorney for the Northwestern District of Massachusetts, seeking damages under federal and state civil rights laws for, *inter alia*, violation of Borucki's constitutional right of privacy. 42 U.S.C. §§ 1983, 1985, 1986, 1988 (1982); Mass.Gen.Laws Ann. ch. 12, § 11I (West 1980). The district court (Freedman, J.) held that Ryan did not have qualified immunity, and thus denied his motion to dismiss the complaint, 658 F.Supp. 325. This appeal followed.[1]

---

* Of the United States Court of International Trade, sitting by designation.

1. Jurisdiction lies to hear an appeal from an order denying qualified immunity. *Bonitz v. Fair,* 804 F.2d 164, 166 (1st Cir.1986); *De Abadia*

## I.

*Background*

On this appeal from the denial of Ryan's motion to dismiss, we take all facts alleged in the complaint as true. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986).

Borucki was arrested and arraigned in February 1983 in connection with damage to twenty-three aircraft at an airport in Northampton, Massachusetts. He did not raise an insanity defense, but the state district court ordered him committed for examinations to determine his competency to stand trial, and to determine his criminal responsibility. *See* Mass.Gen.Laws Ann. ch. 123, § 15(a) (West Supp.1987) (whenever court doubts whether defendant is competent to stand trial or is criminally responsible by reason of mental illness it may order examination). Separate reports on these topics were presented to the state court. Under Massachusetts law, such reports were to remain "private except in the discretion of the court." *Id.* at § 36A. Borucki, by his attorney, entered into a stipulation limited to receipt in evidence of the report dealing with his competence to stand trial. On the basis of that report, on March 29, 1983, Borucki was found competent to stand trial; he then returned voluntarily to the state hospital to await trial. On June 17, 1983, Ryan dismissed the criminal charges against Borucki and held press conferences with various news media during which he "openly discussed the contents of the report on criminal responsibility." Complaint para. 32. Borucki then brought this civil rights action in the federal district court. According to his complaint, Ryan's disclosures to the press of the contents of the psychiatric report violated Borucki's right of privacy. *Id.*

Ryan moved to dismiss the complaint, contending that there was no general right of privacy that would encompass the allegations of the complaint; that if there was such a right, it was not clearly established, so that he was entitled to qualified immunity; that he was entitled to absolute immunity; and that dismissal of the federal claims would in turn necessitate dismissal of the pendent state claims. The district court found that Ryan did have absolute immunity with regard to his conduct in initiating the criminal proceedings, and so dismissed a count of the complaint that had alleged malicious prosecution.[2] However, the court denied Ryan's motion to dismiss those counts of the complaint alleging violation of the constitutional right of privacy, on the ground that a right of privacy applicable to the facts alleged had been clearly established and that Ryan was therefore not entitled to qualified immunity. Because we find that the alleged right of privacy was not clearly established as of the date of Ryan's alleged actions, we hold that Ryan is entitled to qualified immunity, and reverse the determination of the district court.

## II.

*Qualified Immunity*

"[O]fficials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages...." *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Consequently, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bonitz v. Fair,* 804 F.2d 164, 166 (1st Cir.1986). Officials will prevail in their defense "as long as their actions

---

*v. Izquierdo Mora,* 792 F.2d 1187, 1190 (1st Cir. 1986); *see Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2815–17 86 L.Ed.2d 411 (1985) (plurality finds right of immediate appeal from order denying qualified immunity).

**2.** That count of the complaint, Count Four, was dismissed as against Ryan only. The allegations of the complaint regarding other defendants in this action are not at issue on this appeal.

could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* — U.S. —, —, 107 S.Ct. 3034, 3037–40, 97 L.Ed.2d 523 (1987); *Davis v. Scherer, supra,* 468 U.S. at 191, 104 S.Ct. at 3017 (whether official may prevail in his qualified immunity defense depends upon objective reasonableness of his conduct, measured by reference to clearly established law).

In some instances, it may be be unclear whether an alleged official action even potentially implicates the constitutional or statutory right relied upon. *See, e.g., Ricci v. Key Bancshares of Maine, Inc.,* 768 F.2d 456, 467 (1st Cir.1985) (official had qualified immunity from charge of discrimination on basis of national origin because it is unclear whether such discrimination unaccompanied by discrimination on basis of physiological characteristics is prohibited under section 1981). On the other hand, the law regarding the alleged violation may have been clearly enunciated, but application of that law to the facts may be unclear. *See, e.g., De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986). Or, while the right allegedly violated may have been clear in general outline, it may have been unclear how that right would be balanced against competing rights or interests. *See, e.g., Davis v. Scherer, supra,* 468 U.S. at 192 & n. 10, 104 S.Ct. at 3018 & n. 10 (determination of type of hearing required before discharge would require balancing of competing interests; not unreasonable for defendant to conclude that plaintiff had been provided with fundamentals of due process prior to discharge); *Bonitz v. Fair, supra,* 804 F.2d at 170, 172 (although clearly established that body searches are subject to fourth amendment balancing test for reasonableness, still necessary to determine whether particular search considered unreasonable under prevailing law).

█ Thus, in assessing a claim of qualified immunity, it is not sufficient for a court to ascertain in a general sense that the alleged right existed, otherwise "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton, supra,* — U.S. at —, 107 S.Ct. at 3039; *see De Abadia v. Izquierdo Mora, supra,* 792 F.2d at 1190 ("clearly established" means something less than requiring official to show that principle of law did not exist or there would be few cases in which officials could succeed). For example, although it is clear that there is a right to freedom of speech, it may not be clear that censoring a prisoner's mail will violate that right; and, although it is clear that there is a right to freedom of religion, it may not be clear that shaving off a prisoner's beard grown for religious reasons will violate that right. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981); *cf. Chapman v. Pickett,* 586 F.2d 22, 25–26 (7th Cir.1978) (not clear that prisoner had right to refuse to handle foodstuffs forbidden by his religion; right must be established in particularized way). Accordingly, a court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate that right. *See Anderson v. Creighton, supra,* — U.S. at —, 107 S.Ct. at 3038; *Davis v. Scherer, supra,* 468 U.S. at 195, 104 S.Ct. at 3019.

In short, while an official has a presumptive knowledge of constitutional standards, *Floyd v. Farrell,* 765 F.2d 1, 4–5 (1st Cir. 1985), he is not expected to determine the manner in which the law's grey areas will be clarified and defined. *See Procunier v. Navarette, supra,* 434 U.S. at 565, 98 S.Ct. at 861 (officials could not reasonably have been expected to be aware of constitutional right that had not yet been declared); *Harlow v. Fitzgerald, supra,* 457 U.S. at 818, 102 S.Ct. at 2738 (official could not reasonably be expected to anticipate subsequent legal developments); *De Abadia v. Izquierdo Mora, supra,* 792 F.2d at 1190 (process of change in law usually involves sharpening of lines in law's grey areas, absent which there could reasonably be excusable

mistakes). Against this background, we consider whether Ryan's act of revealing the contents of Borucki's psychiatric report violated a right of privacy clearly established as of June 17, 1983, the date of Ryan's press conferences.[3]

### III.

*Right of Privacy*

A. "[A] right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). In *Roe v. Wade,* the Supreme Court placed the origins of that right in the fourteenth amendment's concept of personal liberty. *Id.* at 153, 93 S.Ct. at 726; *Whalen v. Roe,* 429 U.S. 589, 598–99 n. 23, 97 S.Ct. 869, 876 n. 23, 51 L.Ed.2d 64 (1977) (Court in *Roe v. Wade* determined that despite earlier opinions placing right to privacy in penumbra of other fundamental rights, the right is founded in fourteenth amendment concept of personal liberty).

"[T]he personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit within the concept of ordered liberty'...." *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976) (citing *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288); *Bowers v. Hardwick,* —— U.S. ——, ——, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986). The personal rights thus far found to be within the right of privacy include rights of decision-making in "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis, supra,* 424 U.S. at 713, 96 S.Ct. at 1166; *accord Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) (Court has long recognized that freedom of personal choice in matters of

marriage and family life is liberty protected by due process clause of fourteenth amendment); *Whalen v. Roe, supra,* 429 U.S. at 600 n. 26, 97 S.Ct. at 876 n. 26. In addition to this aspect of the right of privacy, imposing "limitations on the States' power to substantively regulate conduct," *Paul v. Davis, supra,* 424 U.S. at 713, 96 S.Ct. at 1166, the Court has indicated, in *Whalen v. Roe,* that the right of privacy also encompasses an "interest in avoiding disclosure of personal matters," *Whalen, supra,* 429 U.S. at 599, 97 S.Ct. at 876.

Zones of privacy are created as well by specific constitutional guarantees, such as those of the first, third, fourth, and fifth amendments. *See Paul v. Davis, supra,* 424 U.S. at 712–13, 96 S.Ct. at 1165–66 (cases indicate that zones of privacy may be created by specific guarantees; other privacy cases deal generally with substantive aspects of the fourteenth amendment); *cf. Griswold v. Connecticut,* 381 U.S. 479, 483–84, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (right of privacy in one's associations is a zone of privacy created by first amendment; other guarantees create other zones of privacy); *Katz v. United States,* 389 U.S. 347, 350 & n. 5, 88 S.Ct. 507, 510 & n. 5, 19 L.Ed.2d 576 (1967). Remaining unclear is the relationship of these zones of privacy, created by specific guarantees of the Bill of Rights, to the right of privacy found, in *Roe v. Wade,* to have its origin in the fourteenth amendment's concept of personal liberty. *Cf. Griswold v. Connecticut, supra,* 381 U.S. at 484–85, 85 S.Ct. at 1681–82 (in finding that statute prohibiting use of contraceptives violated constitution, Court relies on zone of privacy created by several constitutional guarantees, citing to first, third, fourth, fifth, and ninth amendments); *DeMasi v. Weiss,* 669 F.2d 114, 120 (3d Cir.1982) (right of privacy has been developed on case-by-case basis, finding source in implicit notions behind first,

---

**3.** Borucki's complaint alleges that Ryan's actions violated a right of privacy founded in the eighth and fourteenth amendments. Complaint paras. 66, 73, 81, 89. No argument has been presented on this appeal to support the proposition that the eighth amendment, which prohibits, *inter alia,* cruel and unusual punishment, was implicated by Ryan's revelations to the press. It certainly was not "clearly established" that the eighth amendment would be violated by such actions, and we therefore focus on the complaint's allegation that Ryan's disclosures violated a fourteenth amendment privacy right.

fourth, fifth, ninth, and fourteenth amendments, and the fundamental concept of liberty); Gerety, *Redefining Privacy*, 12 Harv. C.R.—C.L.L.Rev. 233, 239–40 n. 25 (1977) (privacy cases after *Griswold* have not settled question of constitutional derivation of right of privacy); Note, *On Privacy: Constitutional Protection for Personal Liberty*, 48 N.Y.U. L.Rev. 670, 698 (1973) (opinion in *Roe v. Wade* suggests that Court is willing to use concepts underlying certain of first nine amendments as one standard by which to determine whether a personal interest is to be given privacy protection); Smith, *Constitutional Privacy in Psychotherapy*, 49 Geo. L. Rev. 1, 17 (1980) (Justices in *Griswold* did not agree whether right of privacy emanated from penumbras of several guarantees or was specifically derived from ninth or fourteenth amendments).

In the present case, the district court found that the information in Borucki's psychiatric report was protected by the "confidentiality branch of the constitutional right of privacy," and that that right was clearly established as of the date of Ryan's alleged actions, June 17, 1983. *Borucki v. Ryan*, 658 F.Supp. 325, 330, 331 (D.Mass. 1986). In so finding, the court relied upon *Whalen v. Roe, supra*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 and *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). At 330.[4] We therefore examine those cases in some detail.

*Whalen* concerned a New York statute pursuant to which the State recorded in a centralized computer file the names and addresses of all persons who had obtained certain prescription drugs.[5] In addressing the contention that the statute violated a right of privacy, the Court stated:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. *One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.*

*Whalen, supra*, 429 U.S. at 598–600, 97 S.Ct. at 875–77 (footnotes omitted) (emphasis added). The two kinds of privacy interests identified in this quotation from *Whalen* may be characterized as the "confidentiality" and "autonomy" branches of the constitutional right of privacy.[6] In *Whalen*, violations of both kinds of interest were alleged, on the ground that the readily available form of the prescription information created a concern that the information would become publicly known and adversely affect the patients' reputations, and that this concern would in turn influence patients' decisions regarding the use of drugs vital to the care of their health. *Id.* at 600, 97 S.Ct. at 877.

With respect to the fact that the New York statute did force disclosures to the State itself (although protecting against public disclosures of the information), the *Whalen* Court noted that such disclosures were not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many

---

4. The district court also relied upon the circuit court opinions in *Fadjo v. Coon*, 633 F.2d 1172 (5th Cir.1981); *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979); and *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir.1980), as appropriate readings of *Whalen* and *Nixon*. The district court declined to rely upon another circuit court case, *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir.1981), on the ground that it reflected an erroneous reading of the *Whalen* and *Nixon* decisions. Slip op. at 10.

5. The statute required that prescription forms for certain drugs, such as opium and cocaine, include the name of the physician, and the name, address, and age of the patient. One copy of the prescription form was forwarded to the New York State Department of Health in Albany, where the data was recorded on computer tapes. *Whalen, supra*, 429 U.S. at 593, 97 S.Ct. at 873. Security measures protected the collected data from public disclosure, and willful violation of provisions prohibiting public disclosure of the patients' identity was made a crime. *Id.* at 593–95, 97 S.Ct. at 873–74.

6. *See, e.g., Plante v. Gonzalez, supra*, 575 F.2d at 1128; *Barry v. City of New York*, 712 F.2d 1554, 1558–59 (2d Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). Our use of this terminology indicates neither agreement nor disagreement with the way in which other circuits may have characterized these interests.

facets of health care," and found that, while "[u]nquestionably, some individuals' concern for their own privacy may lead them to avoid or postpone needed medical attention" as a result of the mandated disclosures, the statute nonetheless did not impermissibly invade privacy. *Id.* at 602, 97 S.Ct. at 878. And with respect to the impact of the computer storage method in particular, and the resultant ready availability of data, the Court similarly determined that although the record showed that some persons had been discouraged from using the prescription drugs because of concern about possible disclosure, that also did not burden the constitutional right of privacy. *Id.* at 602–03, 97 S.Ct. at 877–78.[7]

*Whalen* thus indicates that not every government action which affects the confidentiality of medical records will impose a constitutionally cognizable burden on the right of privacy. *Cf. Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978) (although right to marry is fundamental, reasonable regulation not significantly interfering with decision to enter marital relationship may be imposed); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 80–82, 96 S.Ct. 2831, 2846–47, 49 L.Ed.2d 788 (1976) (record-keeping requirements pertaining to first stage of pregnancy not constitutionally offensive because they had no legally significant impact on abortion decision); *McKenna v. Fargo,* 451 F.Supp. 1355, 1380 (D.N.J.1978) (*Whalen* recognized privacy interest in nondisclosure but found interest not unduly burdened). Beyond that, *Whal-*

*en* provides little guidance regarding the nature of the confidentiality branch of the right of privacy. *Compare Whalen, supra,* 429 U.S. at 606, 97 S.Ct. at 879 (Brennan, J., concurring) (broad dissemination by state officials of the collected data would clearly implicate protected privacy rights), *with id.* at 608–09, 97 S.Ct. at 881 (Stewart, J., concurring) (broad dissemination of the collected data would not clearly implicate protected privacy rights); Winslade & Ross, *Privacy, Confidentiality, and Autonomy in Psychotherapy,* 64 Neb.L.Rev. 578, 598 (1985) (*Whalen* stops short of recognizing a constitutional right in informational privacy); *cf.* Note, *Damages Under the Privacy Act of 1974: Compensation and Deterrence,* 52 Fordham L.Rev. 611, 617 (1984) (Court intimated in *Whalen* that right to privacy may to some undefined extent apply to government agency information activities); Gerety, *Redefining Privacy,* 12 Harv. C.R.—C.L.L.Rev. 233, 290–91 n. 199 (1977) (*Whalen* did not determine whether zone of privacy includes doctor-patient relationship, although no doubt such a zone exists because the relationship touches upon the intimacy of the patient).

For example, it is not clear from *Whalen* whether, to be constitutionally protected by a right of nondisclosure, personal information must concern an area of life itself protected by either the autonomy branch of the right of privacy or by other fundamental rights or whether, to the contrary, the right of confidentiality protects a broader array of information than that implicated by the autonomy branch of the right of privacy.[8] *Compare Fadjo v. Coon,* 633

---

7. Additional factors apparently underlying the Court's ruling were that the State could have proscribed use of the drugs entirely, and that the decision of whether to use the drugs, within certain prescription limits, was left entirely to the physician and patient. *Whalen, supra,* 429 U.S. at 603, 97 S.Ct. at 878.

8. In support of the proposition that the Court's earlier cases had indicated that the right of privacy includes an "individual interest in avoiding disclosure of personal matters," 429 U.S. at 599, 97 S.Ct. at 876, *Whalen, id.* at 599 n. 25, 97 S.Ct. at 876, n. 25, cited to *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), in which the Court had found that an individual cannot constitutionally be prose-

cuted for possession of obscene materials in his home; to *Griswold v. Connecticut, supra,* 381 U.S. at 483, 85 S.Ct. at 1681, in which the Court had found unconstitutional a law prohibiting the use of contraceptives; and to the concurring and dissenting opinions of Justice Powell and Justice Douglas, respectively, in *California Bankers Ass'n v. Schultz,* 416 U.S. 21, 78, 79, 94 S.Ct. 1494, 1525, 1526, 39 L.Ed.2d 812 (1974), in which the Justices had addressed the question of whether individuals had a constitutionally justifiable expectation of privacy in documentary details of financial transactions reflected in their bank accounts. *See id.* at 82 (Douglas, J., dissenting). While these cases do in part concern government discovery of private information, they implicate other protected rights as

F.2d 1172, 1175 (5th Cir.1981) (matters falling outside the scope of the decision-making branch of the privacy right, which protects decisions relating to matters such as marriage, may yet implicate the individual's interest in nondisclosure), *with J.P. v. DeSanti,* 653 F.2d 1080, 1089 (6th Cir.1981) (*Whalen* did not create general right to nondisclosure of private information); *cf. O'Brien v. DiGrazia,* 544 F.2d 543, 546 (1st Cir.1976) (mandatory disclosure of financial information not unconstitutional where, *inter alia,* no claim that the disclosure was being used to punish or deter exercise of other constitutional rights), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

Not only does *Whalen* provide little guidance regarding the parameters of the confidentiality branch of the right of privacy, the Court explicitly refrained from deciding whether the right of privacy would be implicated if, after collection of the prescription information, that data was publicly disclosed in violation of statutory safeguards against disclosure. 429 U.S. at 605–06, 97 S.Ct. at 879. Noting that "[t]he right to collect and use such data for public purposes is typically accompanied by a concomitant *statutory or regulatory duty* to avoid unwarranted disclosures," *id.* at 605, 97 S.Ct. at 879 (emphasis added), the Court stated:

> Recognizing that *in some circumstances* that duty *arguably* has its roots in the Constitution, nevertheless New York's statutory scheme ... evidence[s] a proper concern with, and protection of, the individual's interest in privacy. *We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions. We simply hold that*

this record does not establish an invasion of any right or liberty protected by the Fourteenth Amendment.

*Id.* at 605–06 97 S.Ct. at 879–80 (emphasis added). Notably, this scenario, which *Whalen* declines to consider, is similar to that presented by the present case, in which Ryan disseminated personal information collected under a statutory proviso that it would be kept "private" except in the discretion of the court.

Relevant to an analysis of *Whalen* is *Paul v. Davis, supra,* 424 U.S. 693, 96 S.Ct. 1155. In *Paul,* state police distributed a flyer identifying the plaintiff as an "active shoplifter," although the plaintiff had merely been arrested, not convicted, of shoplifting, and although the charges against him were later dismissed. Addressing a procedural due process claim, the Court found that "reputation alone, apart from some more tangible interests such as employment" is not " 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process clause." *Id.* at 701, 96 S.Ct. at 1161. The Court also found that the flyer did not violate any substantive due process right, because "[plaintiff's] claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner." *Id.* at 713, 96 S.Ct. at 1166.

▮ Under *Paul,* an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringe-

---

well, such as the autonomy branch of the privacy right, and first amendment rights. They therefore leave unclear, as does *Whalen* itself, the nature of the constitutional right of nondisclosure, or confidentiality. *Compare Whalen,* 429 U.S. at 608–09, 97 S.Ct. at 818 (Stewart, J., concurring) (*Griswold* and *Stanley* do not support proposition that broad dissemination by

state of prescription information would clearly implicate constitutional privacy rights), *with* Comment, *A Constitutional Right to Avoid Disclosure of Personal Matter: Perfecting Privacy Analysis in J.P. v. DeSanti,* 71 Geo. L.J. 219, 232–33 (1982) (analyzing *Griswold* and *Stanley* as protecting a right of nondisclosure).

ment of more "tangible interests," *Paul, supra,* 424 U.S. at 701, 96 S.Ct. at 1161, must be alleged as well. *See Laureano-Agosto v. Garcia-Caraballo,* 731 F.2d 101, 104 (1st Cir.1984); *Limerick v. Greenwald,* 666 F.2d 733, 735 (1st Cir.1981); *Lyons v. Sullivan,* 602 F.2d 7, 11 (1st Cir.), *cert. denied,* 444 U.S. 876, 100 S.Ct. 159, 62 L.Ed.2d 104 (1979). At least one court prior to June 1983 had relied on *Paul* in determining that the constitutional right of privacy does not encompass a general constitutional right of non-disclosure. *See J.P. v. DeSanti, supra,* 653 F.2d at 1088–89 (discussion of confidentiality in *Whalen* does not overrule *Paul* and create constitutional right to have all government action weighed against resulting breach of confidentiality). Additionally, in a case decided after June 1983 with facts somewhat analogous to those here, the Second Circuit relied on *Paul* to conclude that an allegation that a state attorney had systematically leaked grand jury information to the press did not state a claim for section 1983 relief because injury caused by release of stigmatizing information is not as such cognizable under the due process clause. *Powers v. Coe,* 728 F.2d 97, 100–01, 105 (2d Cir.1984); *see also Dean v. Roane General Hospital,* 578 F.Supp. 408, 409 (S.D.W.Va.1984) (citing *Paul,* court finds disclosure by sheriff of medical records concerning prisoner's diabetic condition not invasion of privacy right).

*Paul* does not necessarily prevent a determination that disclosure of certain types of non-public information can give rise to a federal civil rights claim on the ground that disclosure not only caused damage to reputation, but also violated a substantive right of nondisclosure, or confidentiality. *Cf. Littlejohn v. Rose,* 768 F.2d 765, 769 (6th Cir.1985) (*Paul* does not constrain holding in *Roe v. Wade* that there is a constitutionally protected right to privacy which includes matters related to procreation and marriage); *Bohn v. County of Dakota,* 772

F.2d 1433, 1436 n. 4 (8th Cir.1985) (where effect of defamation would be to erode solidarity of plaintiff's family, damage to reputation interest was actionable, and distinguishable from *Paul*), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986); *Slayton v. Willingham,* 726 F.2d 631, 635 (10th Cir.1984) (allegation that police displayed personal photos of plaintiff stated claim for violation of constitutional right of nondisclosure, not merely a claim of damage to reputation); *Jones v. Palmer Media, Inc.,* 478 F.Supp. 1124, 1129 (E.D. Tex.1979) (defamation can give rise to cause of action under constitution when in addition to reputational damage there is violation of fundamental personal privacy right). Nevertheless, the decision in *Paul* made it difficult for the objectively reasonable public official to anticipate if and when a disclosure would implicate a constitutional right, particularly since it apparently precludes use of a bright-line test based solely on whether disclosure will cause public humiliation.

In addition to *Whalen,* the court below relied upon *Nixon v. Administrator of General Services, supra,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867, for its conclusion that Ryan had violated a clearly established right of privacy. In *Nixon,* the Supreme Court considered the constitutionality of a statute which directed the screening by archivists of materials generated during Mr. Nixon's presidency, and the return to Mr. Nixon of personal papers among those materials.[9] In the context of a discussion of Mr. Nixon's claim of privacy in papers concerning "extremely private communications between him and, among others, his wife, his daughters, his *physician,* lawyer, and clergyman, and his close friends as well as personal diary dictabelts ...," *id.* at 459, 97 S.Ct. at 2798 (emphasis added), the Court, relying in part on the "individual interest in avoiding disclosure of personal matters" identified in *Whalen,* assumed that Mr. Nixon did have an expectation of

**9.** Specifically, the Presidential Recording and Materials Preservation Act directed the Administrator of General Services to take custody of the presidential papers and tape recordings of Mr. *Nixon,* and to promulgate regulations providing

for, *inter alia,* the orderly processing and screening by Executive Branch archivists of such materials for the purpose of returning to Mr. Nixon those that were personal and private in nature. *Id.* at 429, 97 S.Ct. at 2783.

privacy in his personal papers. *Id.* at 457–58, 97 S.Ct. at 2797. The Court then used a balancing test to determine that the statute was nonetheless constitutional.[10]

*Nixon* has been cited as reaffirming the confidentiality right referred to in *Whalen,* and to support use of a balancing test when that right is in issue. *See, e.g., Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir. 1986) (citing *Nixon,* information is constitutionally protected when legitimate expectation exists that it will remain confidential while in state's possession); *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.) (interest in nondisclosure of personal matters reaffirmed in *Nixon* which appeared to use balancing test), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); *Fadjo v. Coon, supra,* 633 F.2d at 1176 (citing *Nixon,* balancing test appropriate where right of nondisclosure is in issue). It must be emphasized, however, that the discussion of privacy in *Nixon* arose in a fourth amendment context,[11] and that section of the opinion in which the Court cites *Whalen* appears to address the question of whether Mr. Nixon had a "legitimate ex-

pectation of privacy" in the relatively few personal papers among the materials, sufficient to implicate the fourth amendment.[12] *See Nixon, supra,* 433 U.S. at 459, 465, 97 S.Ct. at 2801 (no privacy interest in overwhelming majority of the materials); *J.P. v. DeSanti, supra,* 653 F.2d at 1089 (the *Nixon* citation to *Whalen* was for apparent purpose of establishing that Nixon had expectation of privacy). Consequently, the relevance of the Court's finding that Mr. Nixon had an expectation of privacy in his personal papers, to situations that do not implicate the fourth amendment, is unclear.[13] *Cf.* Comment, *A Constitutional Right to Avoid Disclosure of Personal Matter: Perfecting Privacy Analysis in J.P. v. DeSanti,* 71 Geo. L.J. 219, 234 (1982) (*Nixon* Court seems to confuse fourteenth and fourth amendment privacy).

Given these considerations, we conclude that Supreme Court cases decided prior to June 17, 1983 had not clearly established that a constitutional right of privacy would be implicated by state disclosure of the contents of a court-ordered psychiatric report. First, it was not clearly established,

---

**10.** The Court's conclusion that the statute was constitutional was based in part on the limited nature of the intrusion effected by the screening process. The Court analogized that process to the screening employed during electronic surveillance, which similarly requires some intrusion into private communications unconnected with any legitimate governmental objectives. *Id.* at 463–65, 97 S.Ct. at 2800–01.

**11.** Although violations of privacy rights under the fourth, fifth, and first amendments were alleged in *Nixon,* the first amendment right was discussed separately by the Court. *See Nixon,* 433 U.S. at 455 & n. 18, 97 S.Ct. at 2796 & n. 18. The section of the opinion in which the Court cited *Whalen* concerned contentions made under the fourth and fifth amendments.

**12.** That the *Nixon* Court's use of a balancing test was based on fourth amendment law is suggested by the Court's citations to *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (no ready test for determining reasonableness other than balancing the need to search against invasion search entails), and *Camara v. Municipal Court of the City and County of San Francisco,* 387 U.S. 523, 534–39, 87 S.Ct. 1727, 1733–36, 18 L.Ed.2d 930 (1967) (same). *See Nixon, supra,* 433 U.S. at 458, 97 S.Ct. at 2797.

**13.** A number of Supreme Court decisions suggest that the right of privacy created by the fourth amendment should not be casually conflated with the right of privacy arising under the fourteenth amendment. The *Nixon* Court itself, 433 U.S. at 458, 97 S.Ct. at 2797, cites to *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which points out that:

the Fourth Amendment cannot be translated into a general constitutional "right to privacy".... Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection of a person's *general* right to privacy—his right to be let alone by other people—is ... left largely to the law of the individual States.

389 U.S. at 350–51, 88 S.Ct. at 510–11 (footnotes omitted) (emphasis in original). And, in *Whalen,* the Court had found that the fourth amendment interest in privacy was not implicated by the facts before it. *See Whalen,* 429 U.S. at 604 n. 32., 599 n. 24, 97 S.Ct. at 878–79 n. 32, 876 n. 24. Because it is therefore not "clearly established" that information protected from seizure under the fourth amendment is necessarily entitled to protection under a right of nondisclosure originating in the fourteenth amendment, the *Nixon* opinion is not, for purposes of a qualified immunity analysis, clearly relevant to the facts of this case, in which there is no claim of a fourth amendment violation.

nor has it been argued here, that the area of psychiatric care, like "marriage, procreation, contraception, family relationships, and child rearing and education," *Paul v. Davis, supra,* 424 U.S. at 713, 96 S.Ct. at 1166, is within the areas protected by the autonomy branch of the right of privacy.[14] Second, given the predominantly fourth amendment context of *Nixon;* the uncertain import of the Court's decision in *Paul;* and the paucity of concrete guidance in *Whalen,* it was not clearly established that personal psychiatric information is information protected under the confidentiality branch of the right of privacy.

B. While Supreme Court cases did not clearly establish a right of privacy applicable to the facts of the present case, the Third and Fifth Circuits had held prior to June 1983 that there is an independent right of confidentiality applicable to personal information contained in medical, financial, and other personal records. *See Unit-*

*ed States v. Westinghouse Electric Corp.,* 638 F.2d 570 (3d Cir.1980); *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979); *Duplantier v. United States,* 606 F.2d 654, 670 (5th Cir.1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed. 2d 798 (1981); *Fadjo v. Coon, supra,* 633 F.2d 1172.

The Fifth Circuit, in *Plante,* 575 F.2d at 1119 found that a financial disclosure law implicated the confidentiality branch of the privacy right, although not the autonomy branch. However, balancing the interests involved, the court held the law constitutional. In another Fifth Circuit case, *Fadjo,* 633 F.2d at 1174, the plaintiff alleged that the state had disclosed to insurance companies information, collected during a state investigation, which concerned "the most private details" of the plaintiff's life. The court, citing *Plante* and *Whalen,* concluded that the complaint stated a claim for

---

**14.** Nor, even if decision-making in the area of mental health care were clearly protected by a right of autonomy, would it necessarily follow that state disclosure of court-ordered psychiatric reports on criminal suspects would impose a constitutionally significant burden on that right.

The logic of Supreme Court cases does suggest that among the personal rights protected by the autonomy branch of the right of privacy is the right to make significant decisions regarding physical and psychological health, even when unrelated to specifically protected areas of personal life such as marriage. This is particularly true in the area of mental health, because familial matters may be among concerns discussed with mental health care providers, and because interference with decisions regarding mental health care, or disclosure of communications to mental health care workers, may have first amendment ramifications. *Cf. Doe v. Bolton,* 410 U.S. 179, 211–13, 93 S.Ct. 739, 757–58, 35 L.Ed.2d 201 (1973) (Douglas, J., concurring) (the constitution protects as a privacy interest the freedom to care for one's health and person); *Whalen v. Roe, supra,* 429 U.S. at 606, 97 S.Ct. at 879 (Brennan, J., concurring) (broad dissemination of medical prescription information would clearly implicate constitutionally protected privacy rights); *Caesar v. Mountanos,* 542 F.2d 1064, 1072 (9th Cir.1976) (psychotherapist-patient communications within constitutional right of privacy), *cert. denied,* 430 U.S. 954, 97 S.Ct. at 1598, 51 L.Ed.2d 804 (1977); *Hawaii Psychiatric Society v. Ariyoshi,* 481 F.Supp. 1028, 1038 (D. Hawaii 1979) (decision whether to seek aid of psychiatrist and to communicate personal information to psychiatrist

falls squarely within cluster of constitutionally protected choices protected by zone of autonomy); *Lora v. Board of Education of the City of New York,* 74 F.R.D. 565, 570–71 (E.D.N.Y.1977) (forceful argument has been made that constitutionally protected privacy may include freedom to choose circumstances under which attitudes, beliefs, and opinions are to be disclosed, and such a claim is particularly compelling when material to be disclosed includes communications by a patient to a psychotherapist); Smith, *Constitutional Privacy in Psychotherapy,* 49 Geo. Wash.L.Rev. 1, 22 (1980) (mental and emotional health are as basic and fundamental to ordered liberty as rights related to family life and childbearing); *see also Detroit Edison Co. v. NLRB,* 440 U.S. 301, 318 & n. 16, 99 S.Ct. 1123, 1133 & n. 16, 59 L.Ed.2d 333 (1979) (without addressing any constitutional issue, Court recognized "sensitivity of any human being to disclosure of information that may be taken to bear on his or her competence" and cited to a number of statutes regulating disclosure of various personal records, including medical records); *Nixon v. Administrator of General Services, supra,* 433 U.S. at 529 n. 27, 97 S.Ct. at 2833 n. 27 (Burger, C.J., dissenting) (Court's refusal to provide constitutional protection to matters such as drug prescription records in *Whalen* only serves to emphasize the importance of truly private papers and communications, such as personal diaries or family correspondence). We conclude here only that it was not clearly established on June 17, 1983 that the right of privacy would be violated by Ryan's actions, not whether any aspect of the right of privacy was indeed violated by those actions.

violation of the right of privacy. *See also Duplantier v. United States, supra,* 606 F.2d at 670–71 (right of privacy implicated by financial disclosure law but outweighed by state interest in increasing public confidence and deterring conflicts of interest); *cf. General Motors Corp. v. Director of National Institute of Occupational Safety and Health,* 636 F.2d 163 (6th Cir.1980) (subpoena for employee medical records enforceable under *Whalen* in view of protections against public disclosure), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981); *Schachter v. Whalen,* 581 F.2d 35 (2d Cir.1978) (same); *O'Brien v. DiGrazia, supra,* 544 F.2d at 546 (government interest in having police officers fill out financial questionnaires outweighed any arguable constitutional right of privacy).

The Third Circuit, in *Westinghouse, supra,* 638 F.2d 570, found that employee medical records sought under an administrative subpoena were protected by a constitutional right of nondisclosure. *Id.* at 577. However, in view of the existence of confidentiality requirements and the opportunity for employees to raise individual privacy claims, the court concluded that the public need for the information prevailed over the general privacy interest asserted.

Additionally, the Ninth Circuit, in *Caesar v. Mountanos,* 542 F.2d 1064, 1067 & n. 9 (9th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977), determined that pyschotherapist-patient communications are among the personal areas protected by the right of privacy, but held constitutional an evidentiary rule providing that such communications are not privileged when a patient places his mental or emotional condition in issue. *See also In re Lifschutz,* 2 Cal.3d 415, 467 P.2d 557, 567, 85 Cal.Rptr. 829 (Cal.1970) (patient's interest in keeping communications to therapist confidential draws support from constitution).

A number of district courts also found a constitutional right of nondisclosure applicable to personal information in psychiatric and financial records. *See, e.g., Slevin v. City of New York,* 551 F.Supp. 917, 929 (S.D.N.Y.1982) (autonomy and confidentiality interests were simultaneously affected by financial disclosure law), *aff'd in part and rev'd in part sub nom. Barry v. City of New York, supra,* 712 F.2d 1554, 1556, 1559–60; *Hawaii Psychiatric Society v. Ariyoshi,* 481 F.Supp. 1028, 1037, 1045 (D.Haw.1979) (preliminary injunction issued restraining enforcement of statute authorizing issuance of administrative warrants for records of Medicaid psychiatrists because high probability that statute violated autonomy and confidentiality branches of right of privacy); *McKenna v. Fargo, supra,* 451 F.Supp. 1355 (conditioning employment in fire department on psychological testing implicated right of privacy, but compelling state interest made testing constitutional subject to rules governing access and retention of the information); *Merriken v. Cressman,* 364 F.Supp. 913 (E.D.Pa.1973) (school program collecting personal information about students to identify potential drug users violated right of privacy); *cf. Lora v. Board of Education of the City of New York,* 74 F.R.D. 565, 574 (E.D.N.Y.1977) (nondisclosure aspect of right of privacy not so adversely affected as to warrant court's providing shield against limited discovery of students' anonymous files).

Despite the fact that as of June 1983 a majority of courts considering the question had concluded that a constitutional right of confidentiality is implicated by disclosure of a broad range of personal information, courts were not unanimous in that view. *See Natwig v. Webster,* 562 F.Supp. 225, 226–27 n. 1 (D.R.I.1983) (since *Whalen,* courts have disagreed as to the circumstances under which an individual's interest in avoiding disclosure of personal matters warrants constitutional protection). Most notable in this regard is the Sixth Circuit's decision in *J.P. v. DeSanti, supra,* 653 F.2d at 1088–90.

In *DeSanti,* "social histories" had been compiled on youths brought before juvenile court. Those histories included information on "intimate biographical details" collected from numerous sources, including the juveniles, their parents, and their

schools, *see id.* at 1081–82, 1086–87,[15] and were made available to fifty-five different government, social, and religious agencies. The broad dissemination of this information was challenged as an invasion of the right of privacy. *Id.* at 1082, 1085. The Sixth Circuit, relying in part on *Paul v. Davis, supra,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 indicated its disagreement with Fifth and Third Circuit decisions and refused to "construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure." *Id.* at 1088–90.[16]

■ C. We turn now to the question of whether Ryan's dissemination to the press of information from Borucki's psychiatric report, on June 17, 1983, violated a clearly established right of privacy.[17] We note

first that it is not claimed that the *initial* collection by the state, during the court-ordered examination, of the information in the psychiatric report, was unconstitutional. Certainly it was not "clearly established" that such collection would be unconstitutional. Accordingly, we look only to the question of whether it was clearly established that Ryan's further dissemination of that information, to the press, would violate the right of privacy.[18] *Cf.* L. Tribe, *American Constitutional Law* 972 (1978) (legality of government's program for gathering and storing data in the first place will affect success of any challenge to subsequent dissemination, although dissemination may independently violate constitutional norm such as procedural due process); *Providence Journal Co. v. FBI,* 602 F.2d 1010, 1014 (1st Cir.1979) (FOIA exemptions that applied when disclosure

---

**15.** *See* Comment, *A Constitutional Right to Avoid Disclosure of Personal Matter: Perfecting Privacy Analysis in J.P. v. DeSanti,* 71 Geo.L.J. 219, 247 & nn.230–31 (1982) (article states that briefs filed in *DeSanti* case indicate that these "social histories" contained sensitive biographical details including accounts of a juvenile's alleged prostitution, pregnancy, nude modeling, and psychiatric problems, and observations on the alcohol, drug and sexual problems of juveniles' families).

**16.** In the present case, the district court found the analysis in *DeSanti* unconvincing. At 839–840. However, the *DeSanti* decision represents the reasoned view of a circuit court available before June 17, 1983, the date of Ryan's press conferences, and is therefore pertinent to our qualified immunity analysis.

**17.** In reviewing the denial of Ryan's motion to dismiss, we must consider whether Borucki can prove any set of facts in support of his claim that would entitle him to relief. *See Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986); *Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir. 1976). Borucki's complaint does not indicate precisely what information was disclosed; does not indicate whether that information was already on the public record, *e.g.,* via the previous admission into evidence of the other psychiatric report, concerning Ryan's competence to stand trial; and does not allege a basis for Ryan's decision to dismiss the charges, although it does allege arrest without probable cause. For purposes of this opinion, we assume that Borucki would be able to establish that the information disclosed by Ryan to the press was extremely personal and embarrassing and was not on the public record, and that Ryan's dismissal of the

charges was not based on the contents of Borucki's pychiatric reports. Borucki's claim would presumably be strongest on such facts. *Cf. McNally v. Pulitzer Publishinq Co.,* 532 F.2d 69, 77–78 (8th Cir.1976) (where plaintiff alleged that district attorney's disclosure to press of court-ordered psychiatric report violated constitutional right of privacy, court did not need to determine scope of that right where resulting newspaper article contained little, if any, information not already disclosed in open court), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976).

**18.** It appears that Ryan's dissemination of the material may have been in violation of state law, which provided that court-ordered psychiatric reports were "private except in the discretion of the court." Mass.Gen.Laws Ann.Ch. 123, § 36A. Borucki's complaint alleges violation of this state law as one basis for his federal civil rights claim. Complaint, Count 11. However, the existence of a state requirement of confidentiality does not indicate the existence of a constitutional right of privacy, and "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *Davis v. Scherer, supra,* 468 U.S. at 194, 104 S.Ct. at 3019 (footnote omitted); *see Cosines v. Murchek,* 766 F.2d 1494, 1500–01 (11th Cir.1985)(officials had qualified immunity where federal due process rights not clearly established, although state statutory due process rights were clearly established); *Powers v. Coe, supra,* 728 F.2d at 105 (violations of state law alone are insufficient to state a claim for section 1983 relief).

would constitute an "unwarranted invasion of personal privacy" found applicable solely on ground that illegal manner in which information was obtained forbade release), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

As we have previously indicated, *Whalen* appears to have specifically reserved decision as to whether there is a constitutionally rooted duty of nondisclosure regarding personal information collected by the state under assurances of confidentiality. *See Whalen, supra,* 429 U.S. at 605–06, 97 S.Ct. at 879.[19] As of June 1983, lower court decisions had not clearly resolved that question. Indeed, as we have seen, there was a split in the circuits as to whether the right of privacy includes a general right of nondisclosure applicable to personal records. *Compare, e.g., J.P. v. DeSanti, supra,* 653 F.2d at 1089, *with Fadjo v. Coon, supra,* 633 F.2d 1172.

Given this split in the circuits, we believe that it was not clearly established that a constitutional privacy right would even be *implicated* by Ryan's disclosures of information in Borucki's psychiatric report. But even assuming there was such a clear constitutional right, the facts of decided cases did not provide sufficient indication of how that right would be weighed against competing interests in a case such as this.

There were, arguably, interests to be balanced in this case. A reasonable official in Ryan's position could have concluded that there was a government interest in disclosing information in Borucki's psychiatric report. He could have concluded, for example, that there was a public interest in criminal charges arising out of damage to twenty-three aircraft in a Massachusetts airport; in the fact that the charges against the person charged with that crime had been dismissed; and in information concerning that person. He could therefore have concluded that creation of public confidence would be furthered by informing the public on such matters at press conferences held the day the charges were dismissed.[20] *Cf. Duplantier v. United States, supra,* 606 F.2d at 670 (financial disclosure law had value of increasing public confidence in government).

The facts of cases decided as of June 1983 provide little guidance as to how such interests would be balanced. Most of the courts finding a right of confidentiality had used a balancing test to assess violations of that right. *See Barry v. City of New York, supra,* 712 F.2d at 1559 (most courts considering question agree that intermediate scrutiny or balancing approach is appropriate standard of review). *But cf. Caesar v. Mountanos, supra,* 542 F.2d at 1069 (compelling interest test used in connection with right of privacy encompassing pychotherapist-patient relationship). As we have discussed, *supra,* when the law requires a balancing of competing interests,[21] it may be unfair to charge an official with knowledge of the law in the absence of a previously decided case with clearly analogous facts. *See Davis v. Scherer, supra,* 468 U.S. at 192–93 & n. 10, 104 S.Ct. at 3018 & n. 10; *Bonitz v. Fair, supra,* 804

**19.** The court below read *Whalen* as having reserved decision only on the "consequences" of government disclosure of collected data, and found Ryan not entitled to qualified immunity because "it does not appear necessary that a reasonable person have knowledge of the *consequences* of infringing on constitutional rights, but only that the *existence* of that right be clearly established." 658 F.Supp. 331 (emphasis in original). We do not agree with this analysis. First, in *Whalen,* the Court reserved decision, not on the "consequences" of infringing on constitutional rights, but rather on whether a duty to prevent public disclosure has "roots" in the constitution. *See Whalen, supra,* 429 at 605, 97 S.Ct. at 879. Additionally, an official's ability to predict the "consequences" of his challenged actions is indeed germane to a qualified immu-

nity analysis. *See Davis v. Scherer, supra,* 468 U.S. at 195, 104 S.Ct. at 3019; *Anderson v. Creighton, supra,* —— U.S. at ——, 107 S.Ct. at 3039 (officials can act without fear of harassing litigation only if they reasonably can anticipate when conduct may give rise to liability for damages).

**20.** We do not here decide the weight to be given such an interest, assuming that it exists.

**21.** We intimate no opinion as to whether use of a balancing test is appropriate. We merely observe, for purposes of our qualified immunity analysis, that a majority of cases decided as of June 1983 had used some form of a balancing test.

F.2d at 172, 173 n. 10 (to be clearly established, legal norm does not require specific judicial articulation, but in cases involving reasonableness determinations, it may be unfair to charge official with knowledge in absence of prior holding on the particular facts of the case). In several of the decided cases, government interests had prevailed over privacy interests. *See, e.g., United States v. Westinghouse Electric Corp., supra,* 638 F.2d 570; *Caesar v. Mountanos, supra,* 542 F.2d 1064. And cases in which violations of a right of confidentiality were found often involved the constitutionality of initial government acquisition of information, rather than subsequent further dissemination of information, *see, e.g., McKenna v. Fargo, supra,* 451 F.Supp. 1355; *Hawaii Psychiatric Society v. Ariyoshi, supra,* 481 F.Supp. 1028.

## IV.

*Conclusion*

In view of the foregoing, we hold that Ryan's actions did not violate a clearly established constitutional right of privacy and that he is therefore entitled to qualified immunity. Accordingly, the order of the district court denying his motion to dismiss is reversed, and the action is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

TORRUELLA, Circuit Judge (dissenting).

Notwithstanding the majority's well-crafted opinion, I am forced to dissent because I believe that in June of 1983 it was clearly established that the disclosure by a reasonable district attorney "to the news media [of] the intimate details of an individual's [court ordered] psychiatric report, *particularly once the decision [had] been made not to prosecute,*"[22] was a violation of that individual's constitutionally protected right of privacy. *Nixon v. Administrator of General Services,* 433 U.S. 425, 457,

97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (The right to privacy encompasses " 'the individual['s] interest in avoiding disclosure of personal matters' "); *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (same); *Fadjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir.1981) (Action under 42 U.S.C. § 1983 based on revealing the contents of state insurance investigation "[c]learly states a claim under the confidentiality branch of the privacy right"). *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir.1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection"). *See also Duplantier v. United States,* 606 F.2d 654 (5th Cir.1979); *Plante v. González,* 575 F.2d 1119 (5th Cir.1978).

I find it difficult to accept under the circumstances of this case, that an *exact* factual precedent is necessary to alert a person in appellant's position to the fact that the gratuitous, and, at that point, totally unnecessary, disclosure of appellee's psychiatric report, would violate appellee's right to privacy. I can think of few matters containing information more intimate to an individual than that in his or her psychiatric report. Nor can there be many positions mandating the exercise of higher public relations restraint than that imposed on a court officer with respect to a judicially-imposed procedure such as the one in question. Such a situation would cause any reasonable person, not only one versed in the intricacies of the law, to hesitate before acting.

To conclude that under such a setting appellant was not violating clearly established law is in my opinion contrary to both Supreme Court and First Circuit precedent. In *Hall v. Ochs,* 817 F.2d 920, (1st Cir. 1987), in discussing what was meant by "clearly established law" we held that:

In making this determination, we need not find a ruling that considered the precise situation at hand. It is enough,

**22.** *Robert A. Borucki v. W. Michael Ryan, et al.,* 658 F.Supp. 325, (1986), At 331 (emphasis in original).

rather, that there existed case law sufficient to clearly establish that, if a court *were* presented with such a situation, the court would find that plaintiffs' rights were violated. *See King v. Higgins*, 702 F.2d 18, 20 (1st Cir.1983).

At 924 (emphasis in original). In *Vázquez Ríos v. Hernández Colón*, 819 F.2d 319, (1st Cir., 1987), we followed similar reasoning in ruling upon "[t]he basic principles" applicable to politically-motivated discharges subject to scrutiny under *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

In *Anderson v. Creighton*, ─── U.S. ───, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court recently supported our reasoning in *Hall* and *Vázquez Ríos*. In particularizing the meaning of the term "clearly established" law, the Court found:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in the light of preexisting law the unlawfulness must be apparent.

In the light of the preexisting law as of June of 1983, it should have been *clearly* apparent to appellant that his unwarranted disclosure of the contents of appellee's court ordered psychiatrict report, was an invasion of appellee's constitutional right to privacy.

I therefore dissent.