OPINION
Defendant-appellant Harvey Lee White appeals from a judgment determining him to be a sexual predator pursuant to R.C. Chapter 2950. White argues that R.C. Chapter 2950 violates: (1) the prohibition against cruel and unusual punishment in the United States and Ohio Constitutions; (2) the Ex Post Facto Clause of the United States Constitution, as applied to him; (3) the Double Jeopardy Clauses of the United States and Ohio Constitutions; (4) the Due Process Clauses of the United States and Ohio Constitutions, because it is impermissibly vague; (5) Sections I and 2, Article I of the Ohio Constitution; and (6) the doctrine of separation of powers implicit in the Ohio Constitution. White also contends that his court-appointed counsel provided him with constitutionally ineffective assistance by failing to raise all but one of the above arguments at the hearing held to determine White's sexual predator status.
We conclude that R.C. Chapter 2950 does not violate the prohibitions against cruel and unusual punishment or double jeopardy contained in the United States and Ohio Constitutions, nor the prohibition against ex post facto laws contained in the United States Constitution, because it is not a punishment, but rather a remedial measure designed to ensure public safety. We also conclude that the factors set forth in R.C. 2950.09(B)(2) are not impermissibly vague in violation of the Due Process Clauses of the United States or Ohio Constitutions. Furthermore, we conclude that R.C. Chapter 2950 does not constitute an unreasonable exercise of the police power in violation of Section 1, Article I
of the Ohio Constitution, and does not deny convicted sex offenders the equal protection of the law in violation of Section2, Article I of the Ohio Constitution. We also conclude that White was not prejudiced by his counsel's failure to raise any of the aforementioned constitutional arguments, since we have rejected all of them in this appeal.
However, we conclude that the statute impermissibly encroaches upon the judicial power, by prescribing factors that a trial court is required to consider in making a finding of fact. Accordingly, we declare that aspect of the statute to be unconstitutional, Reverse the judgment of the trial court, andRemand this matter to the trial court for a redetermination of whether White is a sexual predator. The trial court is not required to hold a new hearing, but shall determine whether White is likely to engage in the future in one or more sexually oriented offenses, without being required to consider the factors set forth in R.C. 2950.09(B)(2). The trial court shall make that factual finding based upon any evidence that the trial court finds to be relevant.
 I
In 1978, White entered a no contest plea to one count of Rape, and was sentenced to a prison term of seven to twenty-five years.
In July, 1998, the State sought a hearing to determine White's sexual predator status. At the hearing, White argued that the sexual predator statute was invalid on constitutional grounds, including ex post facto and equal protection grounds. The trial court overruled White's constitutional objections, and found that the State had proved by clear and convincing evidence that White was a sexual predator.
White appeals from the trial court's judgment, raising five assignments of error. During the pendency of his appeal, White filed a Motion to File Supplemental Assignment of Error and Amended Assignment of Error, which this court granted. On April 21, 1999, White filed an Amended Fifth Assignment of Error, and a Sixth Assignment of Error. On March 29, 1999, this court requested, sua sponte, that the parties brief the following issue:
 Whether the provisions in R.C. 2950.09(B)(2) prescribing factors for the trial court to consider in adjudicating the question of fact whether an offender is likely to engage in the future in one or more sexually oriented offenses encroaches upon the judicial power, in violation of the separation of powers implicit in the Ohio Constitution.
On April 29, 1999, White filed a Seventh Assignment of Error on the separation of powers issue. The State has filed a brief in response to White's merit brief, but has not filed responses to White's supplemental briefs, despite being given an opportunity to do so.
 II
White's First Assignment of Error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN LABELING HARVEY LEE WHITE A SEXUAL PREDATOR BECAUSE THE REGISTRATION PROVISIONS OF R.C. CHAPTER 2950, AS AMENDED BY H.B. 180, CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION.
The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution prohibit the imposition of cruel and unusual punishment. This court has previously held that the registration and notification provisions of R.C. Chapter 2950 cannot be characterized as punishment, but instead, are remedial measures designed to ensure the safety of the public. State v. Condron (Mar. 27, 1998), Montgomery App. No. 16430, unreported; State v. Lewis (Oct. 2, 1998), Greene App. No. 97 CA 134, unreported. Thus, the protections against cruel and unusual punishments afforded citizens in this state by the United States and Ohio Constitutions are not implicated by the registration and notification provisions of Ohio's sexual predator law.
White's First Assignment of Error is overruled.
 III
White's Second Assignment of Error states:
 THE TRIAL COURT ERRED IN LABELING HARVEY LEE WHITE A SEXUAL PREDATOR BECAUSE R.C. CHAPTER 2950, AS AMENDED BY H.B. 180, IS UNCONSTITUTIONAL AS APPLIED TO MR. WHITE, WHOSE OFFENSES WERE COMMITTED BEFORE THE EFFECTIVE DATE OF THE AMENDMENTS. THE LAW'S RETROACTIVE APPLICATION VIOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION.
In State v. Cook (1998), 83 Ohio St.3d 404, the court held that R.C. Chapter 2950 is not an ex post facto law prohibited by Section 10, Article I, United States Constitution; thus the trial court did not err in applying R.C. Chapter 2950 to White. White acknowledges the Ohio Supreme Court's holding in Cook, and explains that he is raising the issue on appeal merely to preserve his right to litigate this issue in federal court in the future.
White's Second Assignment of Error is overruled.
 IV
White's Third Assignment of Error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN LABELING HARVEY LEE WHITE A SEXUAL PREDATOR BECAUSE R.C. CHAPTER 2950, AS AMENDED BY H.B. 180 AND AS APPLIED TO MR. WHITE, CONSTITUTES DOUBLE JEOPARDY, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I
OF THE OHIO CONSTITUTION.
The Double Jeopardy Clause contained in Section 10, Article I
of the Ohio Constitution, and in the Fifth Amendment to the United States Constitution, applied to the states through theFourteenth Amendment to the United States Constitution prohibit multiple punishments for the same offense. Because the sexual predator act does not impose criminal punishment, but instead, has a nonpunitive purpose and effect, it does not implicate the protections afforded against double jeopardy in either the Ohio or United States Constitutions. See State v. Vanderpool (Oct. 2, 1998), Montgomery App. No. 16942, unreported.
White's Third Assignment of Error is overruled.
 V
White's Fourth Assignment of Error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN LABELING HARVEY LEE WHITE A SEXUAL PREDATOR BECAUSE R.C. CHAPTER 2950, AS AMENDED BY H.B. 180, PROVIDES NO GUIDANCE AS TO HOW THE FACTORS IN R.C. 2950.09(B)(2) ARE TO BE CONSIDERED AND WEIGHED, RENDERING THE LAW VAGUE, IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
A statute is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." Connelly v. General Construction Co. (1926),269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322. A statute is not unconstitutionally vague if it "(1) provides sufficient notice of its proscriptions, and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement." Perez v. Cleveland (1997), 78 Ohio St.3d 376, 378. The void-for-vagueness doctrine does not require that a statute be drafted with scientific precision, or that every detail regarding its procedural enforcement be contained therein. Instead, the doctrine "permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Id. at 378-379 (citations omitted).
In State v. Fortman (Mar. 27, 1998), Montgomery App. Nos. 16565, 16569, unreported, this court rejected a vagueness challenge to the factors set forth in R.C. 2950.09, similar to the one being raised in the case before us. Quoting State v. Lance
(Feb. 13, 1998), Hamilton App. Nos. C-970301, C-970282, and C-970283, this court stated:
 [T]he factors give the [trial] court the flexibility necessary to determine whether an offender is a sexual predator on a case-by-case basis. The factors may by weighed either in favor of or against the offender being classified as a sexual predator depending on the facts of the case. Nevertheless, the factors are specific enough when considered with the other provisions of R.C. Chapter 2950 to provide the court with minimal guidelines. They do not permit a "standardless sweep" that allows the court to pursue its own "personal predilections." (Footnotes omitted.)
Fortman, supra. Thus, the factors set forth in R.C. 2950.09 are not unconstitutionally vague under either the United States or Ohio Constitutions. Accord State v. Avery (1998), 126 Ohio App.3d 36,52-55.
White's Fourth Assignment of Error is overruled.
 VI
White's Sixth Assignment of Error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN LABELING HARVEY WHITE A SEXUAL PREDATOR BECAUSE R.C. CHAPTER 2950, AS AMENDED BY H.B. 180, IS UNCONSTITUTIONAL IN ITS ENTIRETY IN VIOLATION OF THE [sic] SECTION 1 AND 2, ARTICLE I OF THE OHIO CONSTITUTION.
White contends that R.C. Chapter 2950 violates Sections 1 and2, Article I of the Ohio Constitution, because it impermissibly interferes with a convicted sex offender's rights to liberty, property, privacy, and reputation, and denies convicted sex offenders the equal protection of the law.
 A
First, White requests that we follow the Eleventh Appellate District's decision in State v. Williams (Feb. 2, 1999), Lake App. No. 97-L-191, unreported, holding that R.C. Chapter 2950 violates Section 1, Article I of the Ohio Constitution. We decline to do so.
Section 1, Article I of the Ohio Constitution states:
 All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.
The "police power" is the government's authority to adopt and enforce laws to protect the public's health, safety, morals, and welfare. C.A. King Co. v. Horton (1927), 116 Ohio St. 205, paragraph three of the syllabus.
Almost every exercise of the state's police power will interfere with someone's right to liberty, property, or happiness, guaranteed under Section 1, Article I of the Ohio Constitution.Benjamin v. Columbus (1957), 167 Ohio St. 103, paragraph five of the syllabus. Where the state, in its exercise of the police power, enacts legislation, which interferes with someone's right to liberty, property, or happiness, the legislation will be valid, notwithstanding, if (1) it bears a real and substantial relation to the public's health, safety, morals, or general welfare, and (2) is not unreasonable or arbitrary. Id. Legislation enacted pursuant to the police power is unreasonable in the constitutional sense if it "intefere[s] with private rights beyond the necessities of the situation," or if it is "unduly oppressive upon individuals." Froelich v. Cleveland (1919), 99 Ohio St. 376, paragraph three of the syllabus.
In arriving at its determination that R.C. Chapter 2950 violated Section 1, Article I of the Ohio Constitution, theWilliams court initially found that R.C. Chapter 2950 bears a real and substantial relation to the public safety. Nevertheless, the court concluded that it was an unreasonable exercise of the police power because it interfered with the rights of convicted sex offenders "beyond the necessities of the situation," and because the statutory scheme is "unduly oppressive"; thus, theWilliams court concluded, R.C. Chapter 2950 violates a convicted sex offender's rights to liberty, property, privacy, and reputation guaranteed to him under Section 1, Article I of the Ohio Constitution.
The Williams court began its analysis by noting that under the notification provisions in R.C. 2950.11(B), the sheriff in the county where the sex offender intends to reside, must send notice of the sex offender's pending release from prison to certain members of the community. The notice must contain certain information about the offender, including his name, the address at which he will reside, and the sexually oriented offense or offenses that have caused him to be labeled a sexual predator. The Williams court opined that since there was "no requirement that the sheriff provide the community with a photograph of the offender[,] * * * the notice does nothing to help the members of the community to keep watch for the `predator' in case he tries to abduct a loved one."
Continuing, the Williams court stated that the notice requirement is "apparently intended to trigger a response by the community to (1) seek out more information about their rights as potential victims, (2) counsel and educate their children as to the dangers posed by strangers, and (3) initiate `constructive' plans, whatever those may be." The Williams court insisted, however, that these three purposes could be served equally well by giving notice to the community "that an unspecified person who has been convicted of a particular crime is due to move into anunspecified residence nearby." (Emphasis sic.) TheWilliams court concluded that "[t]he unspecific notice would adequately trigger the legislature's desired response of having the community prepare themselves." We find this reasoning unpersuasive.
First, the conclusion of the Williams court that the notice provisions of R.C. 2950.11(B) do nothing to help members of the community protect themselves against being attacked by a sexual predator since the notice is unaccompanied by a photograph of the offender, is unfounded. It was not unreasonable for the General Assembly to conclude that it could help members of a community to remain vigilant with respect to a person adjudged to be sexual predator, by providing them with the sexual predator's name, address, and sexually oriented offense or offenses that triggered his sexual predator adjudication. The fact that the General Assembly could have done more by providing members of the community with a photograph of the sexual predator, for instance, does not warrant a contrary conclusion.
Second, the alternative notice provision suggested by theWilliams court, which would send members of the community "notice that an unspecified person who has been convicted of a particular crime is due to move into an unspecified residence nearby[,]" is deeply troubling. The kind of notice envisioned by the Williams
court would essentially inform members of a community "thatsomeone, who lives somewhere near them, is guilty of having committed some kind of crime, so WATCH OUT FOR HIM!" This type of notice would create an environment in our communities where every person would feel compelled to keep a wary and distrustful eye on each of his neighbors.
The Williams court found that "[s]ingling the offender out by name and address, and calling him a `predator' needlessly infringes on the rights of individuals in several important respects." For instance, the Williams court found that the notice provision might subject the offender to ostracization, embarrassment, or harassment, thereby interfering with his right to privacy, which the Williams court found to be an "inalienable right" protected by Section 1, Article I of the Ohio Constitution.
However, in Cook, the Ohio Supreme Court stated:
 This court is not blind to the effects of the notification provisions of R.C. Chapter 2950. Offenders may become ostracized from society and even experience harassment. However, "an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not itself state a cause of action for violation of a constitutional right; infringement of more `tangible interests' must be alleged as well." (Citation omitted.) Borucki v. Ryan (C.A.1, 1987), 827 F.2d 836, 842-843. Further,"[t]he harsh consequences [of] classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions." State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060, unreported.
 As to the dissemination of information regarding the offender's status, a conviction has always been public record. The General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders. Cook, supra, at 413.
Although the Ohio Supreme Court made the foregoing comments in relation to its holding that R.C. Chapter 2950 does not violate the Retroactivity Clause of the Ohio Constitution, the comments are highly relevant to the issue immediately before us, and they compel the conclusion that the notice provisions in R.C.2950.11(B) do not violate any privacy rights an offender may possess pursuant to Section 1, Article I of the Ohio Constitution.
The Williams court also found that the notice provision in R.C. Chapter 2950 might encourage members of the community to take concerted action to prevent the sex offender from purchasing property in their neighborhood, or even to "take it upon themselves to damage or destroy the offender's house in an effort to convince him to move out." Additionally, the Williams court stated that "the practical effect of R.C. Chapter 2950 is that the offender may not be able to hold a certain job or to work freely in this society." Thus, the Williams court concluded, the notice provision needlessly interferes with a sex offender's rights to acquire property and protect it, as guaranteed him under Section1, Article I of the Ohio Constitution.
However, as the dissent in Williams indicates, these harms are speculative, and presently unsupported by any empirical evidence. "[D]eclaring a statute unconstitutional on the basis of possible future denial of constitutional rights obscures, to a significant degree, the basic tenet that duly enacted statutes are entitled to a presumption of constitutionality." Williams, supra,
dissent by Ford, P.J. Furthermore, as the Ohio Supreme Court indicated in Cook, the harsh consequences of the community notification provision stem from the consequences of the offender's own past conduct, not the sexual predator law per se.Id. at 413.
The Williams court also found that the provision in R.C.2950.11(B)(4) requiring the sheriff to state in the notice that the offender has been found to be a sexual predator is "slanderous," because the word "predator" is defined as "an animal that depends on predation for its food." The Williams court concluded that this "slanderous" language violated the sex offender's "right to reputation," which the Williams court determined was another one of the rights protected under Section1, Article I of the Ohio Constitution.
However, as the Ohio Supreme Court has stated in Cook, an allegation that government defamation has caused damage to reputation does not, by itself, state a cause of action; more tangible interests must be involved. Id., (relying on Borucki,supra). Additionally, the term "sexual predator" has a commonly understood meaning, and the use of the term serves the legitimate purpose of alerting members of the community to the seriousness of the potential danger they face.
The Williams court also found unreasonable the provision in R.C. 2950.11(A) that requires the sheriff to give a written notice regarding the sexual predator to the executive officer or hiring coordinator of various community agencies, including children services agencies, and local school districts. The Williams court noted that the apparent purpose of this requirement is to prevent these agencies from hiring sexual predators. Nevertheless, theWilliams court insisted that this purpose could be served by making "simple background checks," and that broadcasting a notice to these agencies needlessly interferes with the sex offender's right to reputation, liberty, and privacy.
However, it is not unreasonable for the General Assembly to take steps to ensure that children services agencies, preschools, schools, and other government agencies do not allow a sex offender to escape their internal screening processes for hiring applicants. Furthermore, the fact that the information regarding the sex offender's past crimes is already in the public domain militates against finding the requirement to be unreasonably intrusive with respect to a sex offender's rights to liberty, reputation, or privacy.
Additionally, the Williams court found that the verification provisions contained in R.C. 2950.06, requiring sexual predators to personally appear at the sheriff's office and verify their address every 90 days for life, constituted an unreasonable interference with the sex offender's liberty. The Williams court also found unreasonable the requirement in R.C. 2950.07(C), which provides that if a sexual predator is convicted of a sex offense in the future, and is labeled a sexual predator with respect to that crime, he must independently comply with the registration and verification schedule of each offense.
However, in Cook, the Ohio Supreme Court concluded that "the registration and address verification provisions of R.C. 2950 arede minimis procedural requirements that are necessary to achieve the goals" of the statute. In addition, the Cook court stated:
 The defendant argues that the lifetime address verification requirement for sexual predators is onerous. R.C. Chapter 2950 distinguishes between three classifications of sex offenders — sexually oriented offenders, habitual sex offenders, and sexual predators. Sexual predators are by definition the most likely to reoffend. R.C. 2950.01(E). Thus, the more frequent verification requirement is not excessive, but is justified to enhance law enforcement's ability to monitor the whereabouts of the most dangerous classification of sexual offender. Further, sexual predators, classified as such by a court of law, have the opportunity to submit evidence to prove that their label is no longer justified and thereby have the label and its obligations removed. R.C. 2950.09(D)(1).
* * *
 Thus, we find that the address verification requirements of R.C. Chapter 2950 are narrowly tailored to comport with the respective danger and recidivism levels of the different classifications of sex offenders. Id. at 421-422.
Furthermore, while sexual predators are already required to report any change of address to the sheriff's office pursuant to R.C. 2950.05(A), the 90 day verification requirement provides a margin of safety in the system, which cannot be considered constitutionally unreasonable.
Finally, the Williams court found it "unreasonable for the General Assembly to require that county governments maintain such elaborate record-keeping and ministerial procedures without a correspondingly worthwhile benefit to public safety." However, the General Assembly is in a better position than the judiciary in this state to weigh the benefits that will be attained by this law, against the burdens that will be placed on local governments by it.
In light of the foregoing, we conclude that Chapter 2950 does not violate Section 1, Article I of the Ohio Constitution.
 B
White asserts that the registration and notification requirements imposed upon sex offenders pursuant to R.C. Chapter 2950 deny convicted sex offenders equal protection of the law in violation of Section 2, Article I of the Ohio Constitution. In furtherance of this argument, White asserts that the equal protection provision in Section 2, Article I of the Ohio Constitution provides greater protection to residents in this state than the Equal Protection Clause of the United States Constitution. White also asserts that the constitutionality of the "classification" or "class distinction" drawn by the statute,i.e., requiring convicted sex offenders to comply with the registration and notification provisions contained therein, should be reviewed under the "strict scrutiny" standard, rather than the "rational basis" test, since the statutory classification violates a sex offender's fundamental rights to liberty and privacy. We reject each of White's assertions.
Section 2, Article I of the Ohio Constitution states:
 All political power is inherent in the people. Government is instituted for their equal protection
and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly. (Emphasis added.)
The standard for determining whether a statute violates equal protection is essentially the same under the Ohio and United States Constitutions. State v. Thompkins (1996), 75 Ohio St.3d 558,561. "Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective."State ex rel. Vana v. Maple Hts. City Council (1990), 54 Ohio St.3d 91,92. Under this "rational basis" test, a court must uphold a statute if the classification drawn therein is not "wholly irrelevant" to the achievement of the governmental objective sought to be attained, Menefee v. Queen City Metro
(1990), 49 Ohio St.3d 27, 29, or, stated another way, if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective. Denicolav. Providence Hosp. (1979), 57 Ohio St.2d 115, 119. However, if the class distinction drawn by the statute burdens a "suspect class," or abridges a "fundamental right," then the statute must be reviewed under the more rigorous "strict scrutiny" standard. Under the strict scrutiny standard of review, the statute will pass constitutional muster only if it is necessary to promote a compelling government interest. Sorrell v. Thevenir (1994),69 Ohio St.3d 415, 424-425.
This court has previously held that the registration and notification requirements of R.C. Chapter 2950 involve neither a suspect class nor a fundamental right, see State v. Thomas (Mar. 27, 1998), Greene App. No. 97 CA 86, unreported; State v. Bradley
(June 19, 1998), Montgomery App. No. 16662, 16664, unreported; andState v. Lewis (Oct. 2, 1998), Greene App. No. 97 CA 134, unreported; thus, the proper standard of review is the rational basis test. Furthermore, this court has previously held that "protect[ing] the safety and general welfare of the people of this state," which is the General Assembly's stated purpose in imposing the registration and notification requirements, is a legitimate governmental objective, which is rationally furthered by the requirements of the statute. Lewis, supra. Therefore, we conclude that R.C. Chapter 2950 does not violate Section 2, Article I of the Ohio Constitution.
White's Sixth Assignment of Error is overruled.
 VII
White's Seventh Assignment of Error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN LABELING HARVEY LEE WHITE A SEXUAL PREDATOR BECAUSE R.C. 2950.09(B)(2) WHICH PRESCRIBES FACTORS FOR THE TRIAL COURT TO CONSIDER IN ADJUDICATING THE QUESTIONS OF FACT WHETHER AN OFFENDER IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES ENCROACHES UPON THE JUDICIAL POWER, IN VIOLATION OF THE SEPARATION OF POWERS IMPLICIT IN THE OHIO CONSTITUTION.
The doctrine of separation of powers "is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." S. Euclid v. Jemison (1986),28 Ohio St.3d 157, 159. Pertinent to that definition are Section 1, Article IV, which vests the judicial power in the courts, and Section 32, Article II, which prohibits the General Assembly from exercising any judicial power not expressly conferred on it by the Constitution. Consistent with that definition, "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." State ex rel. Johnson v.Taulbee (1981), 66 Ohio St.2d 417, paragraph one of the syllabus. Therefore, "[a] statute that violates the doctrine of separation of powers is unconstitutional. " State ex rel. Ohio Academy ofTrial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 475.
White contends that R.C. 2950.09(B)(2) "limits" a trial court's ability to determine the factual issue of whether a convicted sex offender "is likely to engage in the future in one or more sexually oriented offenses," and, therefore, violates the separation of powers doctrine implicit in the Ohio Constitution. In furtherance of this argument, White asserts that the factors listed in R.C. 2950.09(B)(2) "are generally retrospective," and "impair" the trial court's ability to consider factors not listed therein. For instance, White complains that R.C. 2950.09(B)(2) does not require a trial court to consider other matters relevant to determining whether the offender is likely to commit another sexual offense, including "the effect of long-term incarceration on the defendant's physical ability or likelihood of committing a new sexual offense," or "the potential benefit of future sexual offender treatment." White also faults R.C. Chapter 2950 for not requiring the state to provide the court with expert testimony demonstrating that the convicted sex offender is likely to commit a sexual offense in the future, and for not requiring the trial court to draw a negative inference from the State's failure to present expert testimony on the issue.
White's arguments do not demonstrate that the legislature impermissibly encroached upon the judiciary's role in making the factual determination as to whether a convicted sex offender is a sexual predator. In fact, White's arguments flow in the opposite direction — they fault the legislative branch for not imposing enough limits on the trial court's ability to make a factual determination on the issue. Furthermore, White's argument that R.C. 2950.09(B)(2) impairs a trial court's ability to consider factors not listed therein in determining whether someone is a sexual predator is incorrect. R.C. 2950.09(B)(2) provides that in making a determination as to whether a convicted sex offender is a sexual predator, "the judge shall consider all relevant factors,
including, but not limited to, all of the following * * *." (Emphasis added.) Thus, a court is not prevented by the statute from considering other relevant matters. Nevertheless, the separation of powers argument that White has made presents a further issue: Whether the General Assembly has encroached on a core judicial function by requiring in R.C. 2950.09(B)(2) that the courts "consider" certain evidentiary factors in making a finding of fact.
Within constitutional constraints, it is for the legislative branch, subject to executive veto, to establish the law of Ohio. The function of the judicial branch is to adjudicate disputes arising under those laws, and this involves, as a core function, the adjudication of disputed facts. Just as it is not the proper province of the courts to instruct the General Assembly how to make law, it is not the proper province of the legislature to instruct the courts how to find facts on which the law is applied.
But, it may be argued, the existence of factors that courts are required by law to consider is commonplace. For example, R.C.3105.18 sets forth factors that a trial court is required to consider in exercising its discretion to award spousal support in a divorce action. The power of the General Assembly to prescribe those factors has not been questioned, and we do not question it. The distinction, which is subtle but vital, lies in the function concerned.
Consistent with its policy-making function, the General Assembly may properly require the courts to consider certain matters when granting relief made available to litigants by laws the General Assembly enacts. That can only occur, however, after the claim on which the relief is predicated has been determined by a judicial tribunal. Performance of that function necessarily reserves to the judicial tribunal the predicate determinations of what facts are material to the claim concerned and to find whether, on the record before it, those facts exist.
The object of R.C. 2950.09(B)(2) is not to prescribe what relief a court may grant, but to produce a judicial finding of fact that conforms to legislative policy. To achieve that object, the General Assembly has prescribed evidence which the court must consider in making a finding of fact, which is whether a sexually-oriented offender is likely to re-offend. That requirement usurps the core judicial function of deciding what evidence is relevant and material to an issue of fact to be determined in an individual case. The usurpation produces two potential due process problems.
First, by prescribing what evidence is material to the issue to be determined, R.C. 2950.09(B)(2) deprives a defendant of the right to contest the materiality of the evidence involved. Depriving a defendant of that right denies him his right to due process of law.
Second, by requiring the court to consider the prescribed evidence in every case in which the claim is made, R.C.2950.09(B)(2) creates a strong potential for arbitrary results. That potential is realized by use of the so-called "House Bill 180 Screening Instrument," in which evidence concerning the defendant is plugged into the statutory factors, which are for the most part facially neutral in relation to the issue to be determined. Probation officers who employ the device candidly admit that the array of results is of little use in guiding their recommendations to the court.
These constitutional defects do not, however, affect the otherwise valid and proper finding that R.C. 2950.09(A) requires the court to make, which is whether a defendant is a "sexual predator" and thus subject to the registration and report requirements which the statute imposes. The General Assembly might have avoided the problems involved simply by requiring the courts to order persons convicted of certain sexually-oriented offenses to register and report. Why it did not is unclear.
We conclude that it is beyond the constitutional power of the General Assembly to prescribe particular factors that a trial judge must consider when finding a fact. Nevertheless, the purpose underlying R.C. 2950.01, et al., can be served by severing the factors set forth in R.C. 2950.09(B)(2) from the rest of the statute, and enforcing the statute minus the prescribed factors. This may be accomplished without mandating that trial courts consider certain factors in making the requisite finding of fact. Consequently, we only find the mandated consideration of factors to be unconstitutional, not the balance of the statute.
White's Seventh Assignment of Error is sustained to the extent indicated.
 VIII
White's Amended Fifth Assignment of Error states:
 HARVEY LEE WHITE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, A RIGHT SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION, WHEN COUNSEL FAILED TO RAISE ISSUES AT MR. WHITE'S SEXUAL PREDATOR HEARING THAT WOULD HAVE CHANGED THE OUTCOME OF THE HEARING, HAD THE COURT APPLIED THE APPROPRIATE STANDARDS.
White argues that his court-appointed counsel provided him with constitutionally ineffective assistance by failing to raise at the sexual predator status hearing the constitutional issues raised in White's First, Third, Fourth, Sixth, and Seventh Assignments of Error. However, in order to prevail on his ineffective assistance of counsel claim, White was obligated to show that his counsel's performance was deficient, and that he was prejudiced thereby. Strickland v. Washington (1984),466 U.S. 668, 687. Here, White could not have been prejudiced by his counsel's failure to raise the aforementioned constitutional arguments, since we have considered and rejected all of them, except for the separation of powers argument, which we have sustained to the extent indicated.
White's Amended Fifth Assignment of Error is overruled.
 IX
White's Seventh Assignment of Error having been sustained to the extent indicated, and his other assignments of error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. Upon remand, the trial court shall redetermine whether White is a sexual predator, as defined in R.C. 2950.01(E), without being required to consider any of the factors set forth in R.C. 2950.09(B)(2). The trial court may consider any of the factors set forth in the statute, together with any other factors it may deem relevant. The trial court is not required to hold a new hearing.